## 28486. MOTEN v. THE STATE.

JORDAN, Justice. The appellant, James Moten, was indicted together with Mrs. Francis Lay and Undell Lay for the murder of Dewindle Gates. Undell Lay plead guilty to the crime but later testified for the defense in the trial which resulted in the conviction of the appellant and Mrs. Lay. The state's witness Captain Trubee Smith, a detective for the LaGrange Police Department, gave testimony concerning a confession made by the appellant while in custody. In this statement the appellant said "I choked her to the ground and Undell shot her with a .22 pistol in the upper part of her body. I turned her loose, Undell ran to the car, got a butcher knife, and came back where we were." The appellant also stated that Undell Lay told him that he would give him $500 "to help kill Win." After a hearing out of the presence of the jury, the trial court ruled that the testimony of the officer concerning the statement was admissible.

The appellant testified at the trial that his presence at the scene and assistance in the crime were a result of the threats made by Undell Lay to his life and the lives of his wife and baby. The only question before us on appeal is whether the statement made by the appellant and testified to by Captain Smith was the product of a free, knowing and intelligent waiver of those rights afforded the appellant by both the Constitutions of the United States and the State of Georgia.

It appears from the record that the appellant was questioned on three separate occasions. The evidence shows that on June 18, 1973, the appellant was questioned as a suspect at the police station, but was not detained. Captain Smith testified that prior to the June 18 questioning the appellant was advised of his right to remain silent, that anything he said could and would be used against him, that if he began to talk he could stop at any time, and that if he could not afford an attorney one would be provided for him without cost. The appellant at that time signed a written waiver of his rights, stated that he did not want an attorney, and denied any complicity in the murder. Appellant was arrested on June 19, 1973, and questioned on three or four occasions that day. Captain Smith testified that although he did not completely reread a list of the appellant's rights that he did remind the appellant that he had signed a written waiver, asked him if he understood his rights, and if he understood that he had a right to an attorney. The appellant answered in the affirmative, but

still denied that he had any part in the murder. According to the evidence contained in the transcript of the trial, the appellant, on June 20, came to the office of Captain Smith and stated that he was guilty and that he was willing to give a statement to that effect. Captain Smith testified that prior to the questioning and subsequent confession on June 20 he reminded appellant that he had signed a waiver, asked him if he understood his rights, and also if he understood his right to have an attorney present. Appellant again stated that he understood his rights, that he did not wish to have an attorney and then proceeded with the confession. *Held:*

The appellant contends that the warnings given him on June 18 had grown stale and that the officer's repeated reference to the written waiver signed by the appellant misled the appellant into thinking that he had signed away some of these rights. After careful review of the record we find this contention to be without merit. The United States Supreme Court in Miranda v. Arizona, 384 U. S. 436, 444 (86 SC 1602, 16 LE2d 694, 10 ALR3d 974), stated that "The prosecution may not use statements whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant, unless it demonstrates the use of procedural safeguards effective to secure the privilege of self-incrimination." It appears from the record that the warnings given on June 18, 1973, and referred to above, adequately met the Miranda standard. The question is whether the warnings given the appellant had grown stale over the two-day period and whether the officer's repeated references to the written waiver misled the appellant into thinking that he had forfeited these rights. In *Watson v. State,* 227 Ga. 698, 700 (182 SE2d 446), there was a 7- or 8-hour lapse between the time the appellant was informed of his constitutional rights and a second period of interrogation before which there were no such warnings. In that case we held that "a further warning is not necessary under these circumstances of continued interrogation." Here the time lapse between the full Miranda warning and the subsequent confession was approximately two days. However, after the first complete warning, this warning was reinforced by the authorities prior to each subsequent interrogation, and on each occasion the appellant voluntarily talked to the authorities. The purpose of the Miranda decision was to insure that all statements given in a custodial atmosphere are given freely, voluntarily, and by one fully cognizant of the rights afforded him by the

Constitution. There is no evidence in the record to show that the appellant was either ignorant of these rights or that he was intimidated or misled by the references to the written waiver. To the contrary, on the day the confession was given the appellant voluntarily offered the information and was in no way under duress. There being no showing in the transcript of the trial that the incriminating statement was not given freely and voluntarily we will not disturb the lower court's ruling.

*Judgment affirmed. All the Justices concur.*

SUBMITTED DECEMBER 7, 1973 — DECIDED JANUARY 28, 1974.

*Kendrick W. Mattox, Jr., J. C. Bonner, Jr.,* for appellant.

*E. W. Fleming, District Attorney, Arthur K. Bolton, Attorney General, William F. Bartee, Jr., Assistant Attorney General, G. Stephen Parker, Deputy Assistant Attorney General,* for appellee.