## 30248. WOODARD v. THE STATE.

NICHOLS, Chief Justice.

Wendell Bernard Woodard was indicted and convicted for the offense of rape. His motion for new trial was overruled and the present appeal filed.

The evidence disclosed that while the victim was waiting on a bus at a bus stop in East Point, an automobile pulled up beside her and the lone male driver forced her to get into the automobile with him, drove her to an address on South Bayard Circle where he forced her to go into a vacant apartment where the rape was accomplished. After the rape was committed, she was able to escape and ran out of the apartment but was caught, hit and knocked down. Again, she escaped and ran toward an apartment with a porch light on and this time her attacker got into the car and drove off. The incident was then reported to the police who arrived at the scene some 15 minutes later and took the victim to Grady Hospital for examination. The victim was able to tell the police some of the numbers from the license plate and to give them a general description of such vehicle. She identified the defendant from photographs and later in a lineup. At the time the crime was first reported the victim also reported that she lost a blue cap in the car, which cap was later found in defendant's car. The defendant was first approached by the police a few hours after the occurrence and an interview took place at which time the cap was discovered in his automobile. He was questioned about his activities on the night of the rape and advised "that he should stay around home for at least another couple—maybe couple of days or so . . ." Later in the morning the victim selected the defendant's photograph from a group of pictures which she was shown but then the police were unable to locate the defendant for some two months thereafter. After the defendant was placed under arrest, the victim identified him as her assailant during a lineup. In addition to the victim, two police officers involved in the investigation of

the case testified and corroborated the testimony with reference to the rape being reported, taking her to the hospital, etc.

1. Enumerations of error numbers 1, 2 and 3 complain that the evidence did not authorize the verdict and enumeration of error number 4 complains that the trial court erred in failing to direct a verdict of acquittal. Such enumerations of error are without merit.

2. Enumeration of error number 5 complains that the defendant's character was placed in evidence by the state when a detective testified: "Well, I decided to pull some pictures of Woodard from our file, . . ." When objection was made to such testimony, the trial court instructed the jury not to consider such evidence. In *Creamer v. State,* 229 Ga. 704, 708 (194 SE2d 73), it was held that the admission in evidence of a "mug shot" of the defendant does not inject his character into evidence, citing *Tanner v. State,* 228 Ga. 829, 832 (188 SE2d 512), and the mere statement of the detective that he "decided to pull some pictures of Woodard from our files" would not place the defendant's character into evidence. This enumeration of error is without merit.

3. Enumeration of error number 6 complains that the trial court erred in failing to strike allegedly hearsay testimony, even without objection, relating to the alleged flight of the defendant. This enumeration of error further contends that it was error to instruct the jury on flight.

The testimony alleged to be hearsay was in fact testimony to explain conduct, which testimony comes within an exception and is admissible as direct evidence. See Code § 38-302.

Where, as in this case, the defendant had been interrogated by the police as to his whereabouts at the time the rape occurred and was advised "that he should stay around home for at least another couple—maybe couple of days or so . . ." and then disappeared for some months, the charge on flight was authorized.

4. Enumeration of error number 7 complains that the trial court erred in failing to order stricken hearsay testimony. During the trial of the case a police officer testified that the medical examination of the victim disclosed that penetration had taken place. On cross

examination by the appellant's counsel this officer testified that such report was read to him by a nurse at the hospital. The appellant relies upon the case of *Wesley v. State,* 225 Ga. 22 (2) (165 SE2d 719), where it was held that: "Where, over objection, hospital records were allowed in evidence . . . the allowance in evidence of this report was prejudicial and reversal is ordered." Such decision is indeed authority for a holding that the testimony was hearsay and inadmissible, but it is not authority for a reversal where, as in this case, there was no objection during the trial of the case to the admission of such testimony and in view of other evidence adduced on the trial was immaterial. In the absence of some objection, it was not reversible error to fail to order such hearsay testimony stricken. Compare *Clenney v. State,* 229 Ga. 561, 563 (192 SE2d 907); *White v. State,* 231 Ga. 290, 294 (201 SE2d 436).

5. Under the decision in *Shepherd v. State,* 234 Ga. 75 (4) (214 SE2d 535), the trial court did not err in explaining the bifurcated trial procedure to the jury. Accordingly, the eighth enumeration of error is without merit.

6. Enumeration of error number 9 contends that this court should require more corroboration than is now required under court decisions, and that the charge on such subject given by the trial court was error.

The charge given by the trial court in this case was in accordance with charges approved in *Bryant v. State,* 229 Ga. 60, 63 (189 SE2d 435); and *Wright v. State,* 184 Ga. 62, 69 (190 SE 663) and shows no error. Under such cases the contention of the appellant in this case that additional corroboration should be required as a matter of law is without merit.

7. The tenth enumeration of error complains that the trial court erred in failing to charge the jury, even without request, that they were to make no assumption or draw any conclusion from the defendant's failure to testify.

This enumeration of error presents two questions, to wit: (a) Would such a charge be proper, and (b) Is it error to fail to so charge in the absence of a timely written request.

(a) The state relies upon the decision of the Court of Appeals in *Linder v. State,* 132 Ga. App. 624 (3) (208 SE2d 630) wherein it was held that a charge similar to the one insisted upon in the present case required reversal. That decision relied upon the Act of 1962 (Ga. L. 1962, pp. 133, 134 as amended by the Act of 1973 (Ga. L. 1973, pp. 292, 294)) (Code Ann. § 38-415). The Court of Appeals in *Linder* also cited the following decisions: *McCann v. State,* 108 Ga. App. 316 (312 SE2d 813); *Lynch v. State,* 108 Ga. App. 650 (134 SE2d 526); *Wynn v. State,* 230 Ga. 202 (196 SE2d 401).

Prior to the adoption of the Act of 1962, supra, Code § 38-415 provided only for an unsworn statement by a defendant in a criminal case. In 1962 such Code section was amended so as to permit the prisoner the right to either make an unsworn statement or to testify under oath and subject himself to cross examination as any other witness. Exceptions were placed in such Act including a prohibition against the introduction of evidence of general bad character or prior convictions unless the prisoner should first put his character in issue. This amendment also included a provision that no comment should be made because of a defendant's failure to testify under oath. Each of the cases cited by the Court of Appeals in *Linder* related to a situation when the prisoner could make an unsworn statement or be sworn and cross examined. In each case the jury had been advised of such fact contrary to the mandate of the 1962 Act. The intent of such 1962 Act was that a jury would not be informed that a prisoner making an unsworn statement could have been sworn and subjected himself to cross examination.

In 1973 this Code section was again amended so as to strike the provisions permitting a defendant in a criminal case to make an unsworn statement. Thus, now if he testifies, he must be under oath and subject himself to cross examination. The language "[t]he failure of a defendant to testify shall create no presumption against him, and no comment shall be made because of such failure," remains in such Code section.

Accordingly, the question is now presented as to whether an instruction to the effect that "the defendant's

failure to testify creates no presumption against him and the burden of proving the defendant's guilt beyond a reasonable doubt cannot be presumed to be carried because of the failure of the defendant to testify" would be a violation of the direction that no comment shall be made because of such failure to testify. As shown above, when this language was adopted by the General Assembly, a defendant had three choices: to testify under oath and subject himself to cross examination; make an unsworn statement and not be subject to cross examination; or to remain silent. The intent of the above-quoted language was to preclude any comment on the defendant's embarking upon a course permitted by law, to wit: making an unsworn statement, and having it made known to the jury that he could have been sworn but refused. It was this conduct that was criticized in each of the above-cited cases relied upon by the Court of Appeals in the *Linder* decision. This situation no longer is applicable inasmuch as if the defendant desires to testify, he must do so under oath. The language in such Code section that no comment shall be made because of such failure to testify must be construed in accordance with the first provision of such sentence, to wit: the failure to testify shall create no presumption against a defendant. Thus construed, what is prohibited is a comment that the defendant could have "denied," "explained," or otherwise "disputed" the state's case against him. The forbidding of such comment would have nothing to do with a charge that the jury is to "make no assumption or draw any conclusions from the defendant's failure to testify." Accordingly, it would not have been error to instruct the jury as contended for by the appellant. Compare United States v. Houston, 434 F2d 613; Locklear v. United States, 393 F2d 729. See also *Carter v. State,* 7 Ga. App. 42 (65 SE 1090); *Stephens v. State,* 21 Ga. App. 151 (2) (94 SE 69); *Tucker v. State,* 29 Ga. App. 221 (114 SE 583); all decided prior to the 1962 amendment to Code § 38-415. It necessarily follows that the decision of the Court of Appeals in *Linder v. State,* supra, holding that such a charge was error must be disapproved.

(b) Having determined that such a charge would have been proper, the next question for decision is

whether it was error to fail to so charge in the absence of a proper and timely request. This question is controlled adversely to the appellant's contention by the decision of this court in *Dixon v. State,* 224 Ga. 636 (3) (163 SE2d 737), where it was held: "In the absence of an appropriate written request, it was not error to fail to charge that the failure of the defendant to make a statement was neither an admission nor a denial of his guilt." Accordingly, this enumeration of error is without merit.

*Judgment affirmed. All the Justices concur, except Ingram and Hill, JJ., who concur in the judgment only.*

SUBMITTED AUGUST 22, 1975 — DECIDED SEPTEMBER 5, 1975.

*Horton J. Greene,* for appellant.
*Lewis R. Slaton, District Attorney, Joseph J. Drolet, Assistant District Attorney, Arthur K. Bolton, Attorney General, Harrison Kohler,* for appellee.