### 30242. STAPLETON v. THE STATE.

HALL, Justice.

Defendant Early L. Stapleton appeals from conviction on two counts of murder and one count of aggravated assault and raises among others, two claims under the Fifth Amendment to the United States Constitution. One enumeration, that the charge to the jury that no inference may be drawn from defendant's failure to testify constituted a comment by the judge on the defendant's silence, we find does not rise to constitutional error; the other, that the playing of a taped confession taken during a custodial interrogation without

the benefit of the full Miranda warnings is reversible constitutional error, also has no merit. We therefore affirm his conviction.

Defendant and four others, Larry and Sally NeSmith, Herbert Hall and Donald Neumans, met outside a bar at closing time and decided to go in defendant's station wagon to a nearby town for a late night supper. They first stopped at defendant's home where he picked up his pistol, then continued toward their destination by way of a back road. Sally NeSmith was driving, her husband was sitting next to her in the front seat, and Neumans was riding in the passenger seat. Defendant was seated directly behind Sally NeSmith and Herbert Hall fell asleep on the right side of the rear seat.

Hall testified that he was suddenly awakened by the sound of three gunshots and that he took a gun from the hand of the defendant, Early L. Stapleton. Sally NeSmith and Neumans died almost instantly from shots fired through their heads. Larry NeSmith, who was wounded in the hand, jumped out of the car and ran down the road to a house to call the sheriff. Hall followed, still holding the gun, while the defendant urged Hall to shoot NeSmith. The defendant then disappeared, allegedly also to call the sheriff.

When the sheriff and two deputies arrived, the sheriff went off to search for the defendant and the deputies remained to help load the bodies into an ambulance. As they were doing so, the defendant reappeared and stated to them, "I am the man you are looking for. I shot these people. But I'm sorry." The deputies immediately took him into custody.

1. The defendant's first enumeration of error relates to the playing of a taped confession over defendant's objection that the tape was made in violation of his Fifth Amendment rights and Miranda v. Arizona, 384 U. S. 436 (1965). He makes three claims in this regard: that the full Miranda warnings were not given in that the defendant was never informed of his right to appointed counsel, that he was intoxicated when the warnings given were recited to him, and that they were not repeated and were therefore stale when the taped interrogation was made some thirty hours after his arrest.

.

At trial when the state was about to introduce the taped confession during the questioning of the sheriff, the defense objected and the jury was excused pending a Jackson v. Denno hearing on the tape's admissibility. Jackson v. Denno, 378 U. S. 368 (1963). At such a hearing, the state must prove by a preponderance of the evidence that the confession was made voluntarily. Lego v. Twomey, 404 U. S. 477 (1971). A prerequisite to the voluntariness issue and to allowing use of the confession at trial is that the Miranda warnings must have been given. Miranda v. Arizona, supra.

In Miranda, the United States Supreme Court said, ". . . the following measures are required. [The defendant] must be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, *and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires.*" Miranda, p. 479. (Emphasis supplied.) In elaborating on the full extent of the defendant's rights, the court also stated, ". . . it is necessary to warn him not only that he has the right to consult with an attorney, but also that if he is indigent a lawyer will be appointed to represent him. Without this additional warning, the admonition of the right to consult with counsel would often be understood as meaning only that he can consult with a lawyer if he has one or has the funds to obtain one." Id., p. 473. See Michigan v. Tucker, 417 U. S. 433 (1974); Harris v. New York, 401 U. S. 222 (1971). See also *Dempsey v. State,* 225 Ga. 208 (166 SE2d 884) (1969). It is thus clear from the decisions of the Supreme Court that the defendant must be advised that he has the right to appointed counsel, and if he is not so warned, his statements may not be used by the state in their case in chief against the defendant.

From the evidence elicited during the Jackson v. Denno hearing in the case at bar, it appears from the sheriff's testimony on both direct and cross examination that he did not advise the defendant of his right to appointed counsel. He was asked to repeat the substance of his warnings five times, and admitted on cross examination that was all he told the defendant "to the

best of my recollection."

However, an appellate court is not bound merely by the evidence adduced during the Jackson v. Denno hearing in determining the voluntariness of the confession, but must look to all the evidence contained in the record.[1] The Supreme Court said in Blackburn v. Alabama, 361 U. S. 199, 210 (1959), ". . . we reject the notion that the scope of our review can be thus restricted. Where the involuntariness of a confession is conclusively demonstrated at any stage of a trial, the defendant is deprived of due process. . ." We hold that the reverse is also true; where the voluntariness is shown outside the Jackson v. Denno hearing we will support the ruling of the trial judge admitting it. There is nothing to be gained by requiring a second trial where there is ample evidence brought out in the first trial to support the admission of the confession. See *Sanders v. State,* 235 Ga. 425 (1975). See also Brown v. Illinois, ——U. S.—— (95 SC 2254, 45 LE2d 416) (1975); Morales v. New York, 396 U. S. 102 (1969).

When the jury returned to the courtroom after the trial court had overruled the defendant's motion, the sheriff unequivocally stated he had told Stapleton that, "if he did not have the funds that the court would appoint him a lawyer." We therefore hold that the court did not err in ruling that the Miranda warnings were given to the defendant as required by law.

Defendant further contends, however, that the Miranda warnings were ineffective because he was intoxicated and could not have understood, and voluntarily and knowingly waived, his constitutional rights. Johnson v. Zerbst, 304 U. S. 458 (1938). However, this contention is without merit. The preponderance of the evidence at the Jackson v. Denno hearing was that, although he appeared to be under the influence of alcohol,

---

[1] As the Supreme Court said in Escobedo v. Illinois, 378 U. S. 478, 484, n. 4 (1963), quoting Ashcraft v. Tennessee, 322 U. S. 143, 147, " 'we cannot escape the responsibility of making our own examination of the record.' Spano v. New York, 360 U. S. 315, 316."

he was clearly not "drunk," and was capable of understanding what was said to him. *Welch v. State,* 235 Ga. 243; *Hayes v. State,* 235 Ga. 46.

Defendant's third contention regarding the admissibility of the taped confession involves the thirty hour time lapse between the warnings given to the defendant and the actual taping of the confession. In *Moten v. State,* 231 Ga. 642 (203 SE2d 527) (1974), we held that a two-day period between fully advising the defendant of his rights and the actual confession, at which time he was merely reminded of the previous warnings, did not render the confession inadmissible. See also *Bonds v. State,* 232 Ga. 694 (208 SE2d 561) (1974); United States v. Daulton, 488 F2d 524 (5th Cir. 1973). Here, then, thirty hours between warning the defendant and taping the confession would not in itself render the tape inadmissible. The tape itself shows that the sheriff carefully reminded the defendant of his rights to remain silent and to have an attorney present. It is also clear from the tape that the defendant's confession was entirely voluntary. *Herrmann v. State,* 235 Ga. 400.

We therefore hold that the trial court did not err in admitting the taped confession and allowing it to be played to the jury.

2. Defendant Stapleton contends in his second enumeration of error that the charge given by the court on the failure of the defendant to testify constituted a comment in violation of his statutory, Code Ann. § 38-415, and constitutional rights, United States Constitution, Amendment 5.

The charge as given was "And now I charge you ladies and gentlemen of the jury, that the defendant in this case is not obligated under the law to make any statement in his own defense. The law provides that he may or may not make any statement in his own behalf, as he sees fit. The burden of proof being always upon the State to establish the fact of the guilt or innocence. There is no presumption against the defendant by reason of his silence. The burden is upon the State to establish his guilt beyond a reasonable doubt." The defendant did not request this charge, nor did he object to it at trial.

Defendant's contention that the charge violates his

statutory rights under Code Ann. § 38-415 has been decided adversely to him in our recent decision of *Woodard v. State,* 234 Ga. 901, where we held that it is proper for the court to give a charge on the defendant's failure to testify without a request and that it is not reversible error to fail to give the charge if the defendant does not request it. In *Woodard,* supra, this court expressly disapproved of the Court of Appeals case of *Linder v. State,* 132 Ga. App. 624 (208 SE2d 630) (1974) upon which defendant relies.

*Wynn v. State,* 230 Ga. 202 (196 SE2d 401) (1973), also urged by the defendant, deals not with the court's charge to the jury, but with a statement by the court to the defendant in the presence of the jury advising him of his right to be sworn as a witness or not, or to make an unsworn statement, which was then allowed by law. Compare Ga. L. 1962, pp. 133, 134 with Ga. L. 1973, pp. 292, 294. Without deciding whether *Wynn* has also been overruled by *Woodard,* supra, we find the case distinguishable on its facts, and therefore inapposite.

There is thus no merit in defendant's contention that his statutory rights have been violated. There remains, however, the question whether the court's charge constituted a comment on his failure to take the stand in violation of defendant's Fifth Amendment constitutional right to remain silent without incriminating himself.

In Griffin v. California, 380 U. S. 609 (1965), the United States Supreme Court held that a provision of the California constitution, which allowed the prosecutor to argue that the defendant's failure to deny or explain facts within his knowledge could be considered evidence against him, amounted to a penalty for the exercise of defendant's Fifth Amendment rights, and was thus unconstitutional. In a footnote, however, the court "reserve[d] decision on whether an accused can require, as in Bruno v. United States, 308 U. S. 287 [1939], that the jury be instructed that his silence must be disregarded." 380 U. S. 615, n. 6.

In Bruno, the Supreme Court had found reversible error where the federal trial court had not charged the jury on this point as requested by the defendant. This decision, however, was based entirely on an Act of

Congress, 18 USC § 3481 similar to the Georgia statute noted above, Code Ann. § 38-415, and, as we have said of the Georgia statute, is not dispositive of the Fifth Amendment issue. Thus, there are no cases from the Supreme Court dealing directly with the issue whether a charge on the failure of the defendant to testify constitutes a comment in violation of the defendant's Fifth Amendment rights under Griffin.

In Cupp v. Naughten, 414 U. S. 141 (1973), however, the Supreme Court considered a charge by an Oregon court on the presumption that every witness speaks the truth. The defendant complained that such a charge shifted the burden of proof to him to prove his innocence in violation of his due process rights. Noting that the trial judge also gave charges on the burden of proof, reasonable doubt, and that no inference could be drawn from the defendant's failure to testify, the court looked at the charge as a whole and refused to find an error of constitutional dimensions.

In applying the same reasoning to the case before us, and looking at the charge as a whole, we note the complete charge given on the burden of proof, the presumption of innocence and the meaning of reasonable doubt. We can only conclude, in this context, that there has been no harm to the defendant rising to an infringement of his constitutional rights.[2] As Justice Learned Hand said in Becker v. United States, 5 F2d 45, 49 (2d Cir. 1924), to say that when a trial judge gives such an instruction, "it is error, carries the doctrine of self-incrimination to an absurdity."

---

[2] Although the cases are in some instances unclear as to whether the Fifth Amendment or a statute is being considered, the federal courts are nearly unanimous in holding that the trial court may give the charge on its own motion without committing prejudicial error. See, e.g., Mengarelli v. U. S. Marshal, 476 F2d 617 (9th Cir. 1973); Sullivan v. Scafati, 428 F2d 1023 (1st Cir. 1970); United States v. Carter, 422 F2d 519 (6th Cir. 1970); United States v. Cook, 419 F2d 1306 (5th Cir. 1969); United States v. Wick, 416 F2d 61 (7th Cir. 1969); Caton v. United States, 407 F2d 367 (8th Cir. 1969); United States

We are also persuaded by the reasoning of the Second Circuit: "It is far from clear that such an instruction is prejudicial to a defendant; the chances are rather that it is helpful. The jurors have observed the defendant's failure to take the stand; in the absence of instruction, nothing could be more natural than for them to draw an adverse inference from the lack of testimony by the very person who should know the facts best. And 'despite the vast accumulation of psychological data, we have not yet attained that certitude about the human mind which would justify . . . a dogmatic assumption that jurors, if properly admonished, neither could nor would heed the instructions of the trial court that the failure of an accused to be a witness in his own cause shall not create any presumption against him.' Bruno v. United States, supra." United States v. Garguilo, 310 F2d 249, 252 (2d Cir. 1962). Accord, United States v. McGann, 431 F2d 1104 (5th Cir. 1970).

We therefore hold that the charge to the jury does not violate the Fifth Amendment and was, in fact, beneficial to the defendant.

3. In his third enumeration of error defendant Stapleton alleges that the court erred in not charging during the sentencing phase of the case, that aggravated assault was a reducible offense that could be punished as a misdemeanor upon recommendation of the jury. The defendant did not request such a charge. However, since it is related to sentencing, the charge should have been included by the trial court.

In view of the fact that defendant Stapleton had pleaded guilty to two previous shootings, that the aggravated assault count was coupled with two murders, and that the jury sentenced him to the maximum sentence of ten years on that count there is no indication that the jury would have made such a recommendation. Furthermore, even if given, it is in the discretion of the trial court whether or not to take the jury's advice. In light of these factors, the omission of the enumerated charge was clearly harmless error.

v. Smith, 392 F2d 302 (4th Cir. 1968); United States v. Kelly, 349 F2d 720 (2d Cir. 1965).

4. Appellant's fourth and fifth enumerations of error allege the general grounds and that the jury erred in finding appellant guilty and in fixing the sentences and that the court erred in entering judgment. There was more than ample evidence to support the verdict and sentences. There is thus no merit to these contentions. We therefore affirm the judgment below.

*Judgment affirmed. All the Justices concur, except Gunter, Ingram and Hill, JJ., who dissent.*

ARGUED SEPTEMBER 4, 1975 — DECIDED OCTOBER 29, 1975.

*Paul J. Jones, Jr.,* for appellant.
*Beverly B. Hayes, District Attorney, Arthur K. Bolton, Attorney General, Harrison Kohler,* for appellee.

HILL, Justice, dissenting.

I respectfully dissent from that part of the first division of the opinion which holds that, after a Jackson-Denno hearing shows that the defendant was not advised of his Miranda right to the assistance of appointed counsel, the trial transcript may be considered to show that he was so advised. It is one thing to consider the trial transcript to supplement a Jackson-Denno hearing; it is a different thing to refer to the trial transcript to contradict the evidence adduced at the Jackson-Denno hearing. Cf. *Sanders v. State,* supra, Morales v. New York, supra.

Thus in my view it was error to admit the defendant's confession into evidence.