### A99A2195. TUTEN v. THE STATE.
(529 SE2d 221)

RUFFIN, Judge.

Nash Newbill Tuten was convicted of armed robbery and possession of a firearm during the commission of a crime. He appeals, raising several issues. For reasons discussed below, we affirm.

Gira Vashi testified that she was working at a hotel on February 19, 1996, when two men walked into her office. Both men pointed guns at her, and one of them told her, "Don't scream or else I'll shoot you, and give me all the money you have." She opened the cash register, and they took all the money from it. As the two men left, Vashi called an employee, Lakeisha Montes, asking her to come to the office. Montes testified that she saw two men running from the hotel. They ran down a hill and got into a beige, four-door automobile, which then pulled away. Montes testified that it appeared the car was being driven by a third person. Montes ran back to Vashi, who called the police.

Deputy Elijah Parker testified that he received a dispatch to be on the lookout for two males who were racially described, one wearing a black shirt with a hood, in a brown and beige Oldsmobile Cutlass, which was last seen headed toward Milledgeville Road. Shortly thereafter, he saw a vehicle matching that description turn onto Golden Camp Road. He pulled behind the vehicle and saw that it had three occupants. According to Parker, the occupants "started acting suspicious" when they saw him and ducked down in their seats. The driver sped away, passing a school bus. After Parker activated his blue lights and siren, the vehicle made a left turn into a residential neighborhood and stopped. The two passengers jumped out of the car and ran away, but Parker apprehended the driver, Peter Garris. Deputy David Vest chased the two passengers and apprehended one of them, Jamar Rashad Davis. Deputy Parker discovered two pistols in the vehicle.

Davis told police that he had robbed the hotel along with Garris and Tuten. Investigator Kenny Lynch prepared a photographic lineup for Vashi, and she identified Tuten as one of the gunmen. Davis and Garris also selected Tuten out of a photographic lineup. At

trial, Vashi identified Tuten as one of the robbers, saying that she was "100 percent sure" of her identification. Davis, who had previously been convicted of the robbery, testified that he and Tuten were the two gunmen, while Garris was the getaway driver.

1. Tuten's brief violates our Court of Appeals rules in several respects. For example, there is no statement of the method by which each enumeration was preserved for appellate review, as required by Rule 27 (a) (1). In this case, that omission is far from immaterial, as several enumerations were not preserved at all. We take this opportunity to caution counsel that Rule 27 (a) (1) is not optional, to be ignored when it is inconvenient. If no objection or motion was made below on an issue, counsel should not conceal this fact by simply failing to include the statement required by Rule 27 (a) (1).

In addition, Tuten's brief violates Rule 27 (c) (1) in that the argument section does not correspond to the enumerations of error. Instead, Tuten lumps several different enumerations together, without any clear indication as to how the argument relates to the various enumerations. Such failure makes it difficult to determine precisely what errors Tuten is asserting on appeal. Nevertheless, we will address Tuten's enumerations of error to the extent that they are supported by argument in his brief.

2. In his first enumeration, Tuten contends that the trial court "erred in failing to strike as unresponsive, testimony from the State's investigators naming appellant Tuten as a suspect in violation of the rule against hearsay." Nowhere in his brief, however, does Tuten show that he ever objected to any testimony on the grounds of nonresponsiveness or that he ever moved to strike any such testimony. Moreover, Tuten's brief does not contain any argument whatsoever relating to this particular enumeration. Accordingly, this enumeration is deemed abandoned.[1]

3. In his second enumeration, Tuten argues that the trial court "erred in failing to declare a mistrial when the [State's] investigators named appellant Tuten as a suspect in violation of the rule against hearsay." Nowhere in his brief, however, does Tuten indicate that he ever moved for mistrial on such basis, and our review of the portions of the record cited by Tuten does not reveal such a motion. Since Tuten has not shown that he moved for mistrial on this basis, this enumeration provides no ground for reversal.[2]

4. In his third enumeration, Tuten contends that the trial court erred in failing to rebuke the prosecutor for asking certain questions. Again, Tuten fails to show that he ever raised the issue of prosecu-

---

[1] Court of Appeals Rule 27 (c) (2).

[2] See *Kapua v. State*, 228 Ga. App. 193, 196 (2) (491 SE2d 387) (1997).

torial misconduct or asked the trial court to rebuke the prosecutor. As the Supreme Court has stated, "prosecutorial conduct not objected to at trial will not warrant reversal on appeal."[3] Moreover, Tuten has wholly failed to address this enumeration in his brief, and thus it is deemed abandoned.[4]

5. During direct examination of Investigator Woods, the prosecutor asked Woods what he did after the police had interviewed the various witnesses. Woods responded that the investigation "centered on the name of Nash Newbill Tuten. We developed the photograph of him from previous files and then presented that to Ms. Vashi in the lineup fashion." Tuten did not raise any objection to this response at the time. After the prosecutor asked two more questions and Woods responded to these questions, Tuten's attorney told the court that

> I need to make an objection. I mean, I can make it later, but it needs to be made out of the jury's presence. If you can give me the opportunity to make it later, as well as perfect the record on these other points, I'll do that. Please let it be known I'm objecting at this time.

The court responded, "Sure. Okay. Go ahead." At the conclusion of Woods' testimony, Tuten's attorney moved for a mistrial on the grounds that Woods' reference to "previous files" placed Tuten's character in evidence. The trial court denied the motion, and Tuten asserts this ruling as error.

As an initial matter, it appears that Tuten waived his right to seek a mistrial based on Woods' testimony by failing to make such motion at the time the testimony was given. "It is well settled that a motion for mistrial must be made contemporaneously with the objectionable testimony."[5] Merely objecting to testimony at the time it is offered does not preserve the right to later move for a mistrial based on such testimony.[6] Although several questions after Woods' reference to "previous files," Tuten's attorney informed the court that he had an unspecified objection to make, the attorney did not indicate that he intended to move for a mistrial and did not seek or obtain permission to make such motion at a later time.

Even if Tuten's motion for mistrial were timely, however, the trial court did not err in denying the motion. In *Gravitt v. State*,[7] a

---

[3] *Spencer v. State*, 260 Ga. 640, 646 (9) (398 SE2d 179) (1990). See also *Kapua*, supra.

[4] Court of Appeals Rule 27 (c) (2).

[5] *Stephens v. State*, 232 Ga. App. 738, 739 (2) (503 SE2d 643) (1998). See also *Flynn v. State*, 255 Ga. 415, 419 (6) (a) (339 SE2d 259) (1986) ("a motion for mistrial not made contemporaneously with the alleged misconduct makes the motion not timely").

[6] See *Stephens*, supra.

[7] 239 Ga. 709 (239 SE2d 149) (1977).

police officer testified that a picture of the defendant shown to the victim " 'was a mug shot from the files of the DeKalb County Police Department.' "[8] The Supreme Court held that "such evidence, without more, contains nothing to indicate that the defendant was guilty of previous crimes [and] did not put the appellant's character [in] issue."[9] In *Woodard v. State*,[10] the Supreme Court held that "the mere statement of the detective that he 'decided to pull some pictures of [the defendant] from our files' would not place the defendant's character [in] evidence."[11] Similarly, the Supreme Court held in *Fleming v. State*[12] that testimony that a defendant's identification photograph "came from the G. B. I." did not impermissibly place his character in evidence.[13] Finally, the Supreme Court has stated that

> [u]nder previous decisions of this court, actually exhibiting a mugshot to the jury has not been held erroneous. Therefore, an arguable reference to a mugshot, while not to be encouraged, did not impermissibly place appellant's character [in] issue.[14]

Accordingly, Woods' reference to "previous files" did not impermissibly place Tuten's character in issue.[15] Even if it did, the trial court would not have committed error in refusing to grant a mistrial.

> The granting or refusing of a motion for mistrial is necessarily a matter largely within the discretion of the trial judge, and unless it is apparent that a mistrial is essential to the preservation of the right to a fair trial, the exercise of the judge's discretion will not be interfered with.[16]

Given the fleeting nature of Woods' reference to "previous files," made during a narrative account of the officer's actions, we cannot say it is apparent that a mistrial was necessary to preserve the right to a fair trial, and Woods did not request any further relief such as a curative instruction to the jury.[17]

---

[8] Id. at 712 (5).

[9] Id.

[10] 234 Ga. 901 (218 SE2d 629) (1975).

[11] Id. at 902 (2).

[12] 236 Ga. 434 (224 SE2d 15) (1976).

[13] Id. at 439.

[14] (Citations omitted.) *Knight v. State*, 243 Ga. 770, 775 (3) (257 SE2d 182) (1979).

[15] See *Benjamin v. State*, 211 Ga. App. 670, 672 (2) (440 SE2d 259) (1994) ("a police officer's references to . . . the defendant's picture being in a mug book have been determined not to place a defendant's character in issue").

[16] (Punctuation omitted.) *Hall v. State*, 177 Ga. App. 464, 465 (339 SE2d 658) (1986).

[17] See id.; *Jones v. State*, 250 Ga. 166, 168-169 (3) (296 SE2d 598) (1982).

6. In his fifth enumeration, Tuten contends the trial court erred in allowing Woods to testify to the results of the various photographic lineups. However, as we noted in *Neal v. State*,[18]

> [a] law enforcement officer is permitted to testify to a vocal fact of identification witnessed by himself without its being subject to a hearsay objection. Moreover, the Georgia Supreme Court has also held that such testimony is not subject to a hearsay objection. See *Haralson v. State*, 234 Ga. 406 (216 SE2d 304) (1975).[19]

Although we suggested in *Neal* that the Supreme Court should reconsider its decision in *Haralson* or at least "limit its application to cases in which the identifying witness is available for cross-examination," we stated that we were "constrained to follow the rule."[20] Tuten does not attempt to distinguish *Haralson* or *Neal* or suggest that they are not controlling in this case. Accordingly, the trial court did not err in allowing Woods to testify as to the results of the photographic lineups.

7. Tuten presented an alibi defense at trial, claiming that he was working the day of the robbery. During cross-examination, the prosecutor questioned Tuten about whether he had related his version of events to anyone before trial. In his sixth enumeration, Tuten contends that the trial court "erred in failing to grant appellant's motion for mistrial when the State cross-examined appellant regarding his failure to present evidence of his alibi before trial." However, the transcript does not reflect that Tuten moved for a mistrial following such questioning by the State.[21] Accordingly, this enumeration is without merit.[22]

8. In his seventh enumeration of error, Tuten contends that the trial court erred in allowing the prosecutor to cross-examine him regarding privileged communications with his attorney. Again, however, Tuten fails to show that his attorney ever objected on the basis of attorney-client privilege.[23]

---

[18] 211 Ga. App. 829 (440 SE2d 717) (1994).

[19] (Citations and punctuation omitted.) Id. at 830 (1) (b).

[20] Id.

[21] Well before this line of questioning began, Tuten moved for a mistrial on different grounds, arguing that certain questions by the prosecutor improperly suggested that Tuten should have called his wife as a witness.

[22] See *Kapua*, supra.

[23] Tuten appears to obfuscate this issue by stating that "[w]hen Appellant's trial counsel moved for a mistrial due to the state's violation of the rules of trial practice, the trial court should have granted the motion." However, the motion to which Tuten refers had nothing to do with attorney-client privilege, but with the State's questioning regarding Tuten's failure to call his wife as a witness.

9. In his final enumeration, Tuten claims that his trial counsel was ineffective. Tuten makes no real argument in support of this enumeration but "respectfully requests that any error found not to be preserved due to shortcomings of trial counsel be considered as grounds for his ineffective assistance of counsel claim."[24] We do not believe that this constitutes the type of "argument" necessary to preserve an enumeration for appeal. There is no citation whatsoever to the record, no analysis of any substantive authority, no discussion of how trial counsel's actions fell below an objective standard of reasonableness, no discussion of whether the result would have been different but for counsel's actions, no indication of what allegations of ineffectiveness were raised below, and no citations to trial counsel's testimony at the motion for new trial hearing. In essence, there is nothing but a plea that we find trial counsel ineffective if we think he did anything wrong. "In the absence of proper argument, citation to the record, or citation to authority, we will not consider this enumeration."[25]

*Judgment affirmed. Andrews, P. J., and Ellington, J., concur.*

DECIDED FEBRUARY 3, 2000 — ▬▬▬▬▬

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

*George D. Bush*, for appellant.
*Daniel J. Craig, District Attorney, Charles R. Sheppard, Assistant District Attorney*, for appellee.

---

[24] In particular, Tuten mentions the possibility that we might determine that trial counsel failed to timely object to Woods' reference to Tuten's "previous files." Tuten makes no argument on this issue, however, except to assert that any such failure would be "ineffective, prejudicial and harmful." In any event, as discussed in Division 5, the reference to "previous files" did not impermissibly place Tuten's character in evidence.

[25] *Clark v. Stafford*, 239 Ga. App. 69, 74 (4) (522 SE2d 6) (1999).