## A03A2255. BROWN v. THE STATE.
(602 SE2d 158)

MIKELL, Judge.

Monica Brown was indicted in 1997 on two counts of theft by taking and five counts of criminal attempt to commit theft by taking. The trial court dismissed the theft by taking counts and one criminal attempt count based on improper venue. Brown was convicted of the remaining four counts on June 29, 2001. The court sentenced her to concurrent five-year terms, to be served on probation. She filed several pro se pleadings, one of which the trial court construed as a motion for new trial and denied on April 2, 2003. She appeals from the denial of her new trial motion. We affirm.

1. We first address Brown's eighth enumerated error, in which she contends that the evidence was insufficient to support her convictions.

> On appeal of a guilty verdict, [Brown] no longer enjoys a presumption of innocence, for the jury has heard the evidence and judged its weight and the credibility of witnesses; the evidence is construed so as to uphold the jury's verdict, and on appeal we do not redetermine the factual issues decided by

the jury nor the weight of the evidence, but we only determine its sufficiency under the standard of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). [Cit.][1]

Viewed in its proper light, the evidence shows that in March 1994, Brown established a nonprofit corporation called "Let's Act" and appointed herself as its president. "Let's Act" was designed to be a "scared straight" type of program for underprivileged youths. At the time Brown founded "Let's Act," she was employed full-time with the travel services division of American Express.

Ellen Craig, the manager of the gift matching programs for the American Express Foundation, testified that the Foundation administered two employee gift matching programs for full-time American Express employees. Craig explained that one such program, called the "Volunteer Action Fund Program," rewarded volunteer participation in nonprofit organizations by matching dollar donations up to a two-to-one ratio. To obtain the double matching funds, the employee was required to fill out a form and submit it with his or her contribution to the nonprofit organization, which would sign the form and then send in the application to an outsourcing vendor, who would verify that the organization was nonprofit and that the donor was a full-time employee. The outsourcing vendor would then send verification to American Express. The checks were sent directly to the employee to present to the organization, and a letter was sent to the employee's manager to allow for recognition of the donation.

The state introduced into evidence an application submitted by Brown on June 15, 1995, and a second application submitted by Brown's co-worker, Dwayne Baughn, on August 8, 1995, each indicating that the applicant had donated $1,000 to "Let's Act" and were requesting double matching funds. Kimberly Myles, the executive director of "Let's Act," signed and submitted both applications, and the Foundation disbursed $4,000 to "Let's Act" on October 2, 1995. Several more applications were submitted by Brown, Baughn, and Terrence Barron, another co-worker, all of which were signed by Myles. Brown left American Express in July 1995, but received a three-month severance package, during which time she was still considered to be a full-time employee.

After granting the matching funds from Brown's June 15 application, the Foundation sent a copy of the transmittal letter to her former supervisor, who contacted Craig to inform her that Brown was no longer employed with American Express. Internal security began an investigation of "Let's Act," and Craig eventually contacted Brown

---

[1] *Moncus v. State*, 229 Ga. App. 803 (1) (495 SE2d 118) (1997).

for confirmation that the donations were actually made. In response, in early April 1996, Craig received four Travelers Express money orders in a package with Barron's return address and four money orders in a package with Baughn's return address. The money orders were dated on or about December 20, 1995, corresponding to two applications signed on December 26, 1995. However, Travelers Express records indicated these money orders had been purchased in April 1996. Baughn testified that he did not remember whether he had purchased the money orders that were shown to Craig, but he recalled being with Brown when they were purchased, and he admitted that he had filled them out.

Applications for matching funds signed on April 16, 1996, and May 9, 1996, by Baughn and Barron, respectively, were introduced into evidence. The two donations made by Barron and Baughn were evidenced by cashier's checks included with the applications. Baughn testified that he procured the $1,000 check corresponding to his application for matching funds and that Brown accompanied him to his credit union to obtain the funds. However, the manager of internal audit for the credit union testified that on April 16, 1996, Baughn's account reflected a $1,000 cash deposit and a $1,000 withdrawal to purchase the cashier's check. Baughn equivocated when asked whether he had actually made any donations. However, he indicated that Brown occasionally asked him for money and that he gave her cash. Barron testified that he had never donated any money to "Let's Act" and that he had not purchased either the money orders or the cashier's checks evidencing his donations. Barron stated that he had filled out the check and applications at Brown's request out of a desire to help the kids.

Craig testified that she received a letter from an attorney representing Baughn and Barron demanding payment of the matching funds for the pending applications. The Foundation had never before received such a demand. The record reflects that on July 9, 1996, Craig sent letters to Brown, Barron, and Baughn informing them that the requested funds would not be disbursed until the security department completed its investigation of "Let's Act."

Brown testified that she was not involved in obtaining the money orders and had not submitted the applications dated December 26, 1995, on behalf of Barron and Baughn. She also denied purchasing the cashier's checks for the last two applications for Barron and Baughn, but she admitted to having received the funds and having submitted the applications dated April 16, 1996, and May 9, 1996.

In challenging the sufficiency of the evidence, Brown asserts that she did not submit the applications, that a doubt exists as to whether Baughn had made donations, and that the cashier's check was

purchased through Baughn's bank account. However, Brown's assertions concern matters solely within the province of the jury, not an appellate court.[2] Viewed in its proper light, the evidence is sufficient to enable any rational trier of fact to find Brown guilty beyond a reasonable doubt of criminal attempt to commit theft by taking.[3] Brown admitted to having submitted the two 1996 applications, and Baughn testified to her involvement in procuring the cashier's checks. Accordingly, this enumeration fails.

2. In her first two enumerated errors, Brown asserts that the court's jury charges on venue and criminal attempt were erroneous. Although Brown failed to object to either charge or to reserve objections to the charge, she contends that the court's charge on venue contains "substantial error" that was harmful as a matter of law. "It is well established that if a defendant fails to object to a charge when asked if he has any objections, and fails to reserve objections, he has waived appellate review of the charge as given."[4] The only exception to this rule is when a substantial error in the charge exists that is harmful as a matter of law.[5]

> In order to satisfy this standard, appellant must show that the allegedly erroneous charge was blatantly apparent and prejudicial to the extent that it raises a question whether he has been deprived, to some extent, of a fair trial. Nothing is presented for consideration on appeal unless a gross miscarriage of justice attributable to the jury charge is about to result.[6]

Brown has failed to satisfy this standard. The court charged that

> all criminal cases shall be tried in the county where the crime was committed. . . . [A] person commits the offense of criminal attempt when, with intent to commit a specific crime, she performs any act which constitutes a substantial step toward the commission of that crime; thus, venue for the trial of the charge of criminal attempt is in the county within which a defendant has committed any such act. Therefore, . . . you must find beyond a reasonable doubt that the Defendant, with the intent to commit the crime of theft by taking,

---

[2] See *Moncus,* supra.

[3] *Jackson v. Virginia,* supra.

[4] (Citation omitted.) *Wilson v. State,* 255 Ga. App. 497, 498 (1) (565 SE2d 847) (2002).

[5] OCGA § 5-5-24 (c); *Medina v. State,* 234 Ga. App. 13, 15 (2) (505 SE2d 558) (1998).

[6] (Citations omitted.) *Wilson,* supra.

committed an act within Gwinnett County which constituted a substantial step toward the commission of that crime.

Contrary to Brown's contention, the court sufficiently instructed the jury that venue was an element of each crime and had to be proven beyond a reasonable doubt by the state. "It is not reversible error to fail to charge in the exact language requested when the charge given adequately covers the correct legal principles."[7]

Brown also contends that by only including "substantial step" as a requirement for venue in the charge and not using the exact language from the indictment the court committed reversible error under the holding in *Dukes v. State*.[8] We disagree.

In *Dukes*, our Supreme Court reversed a theft conviction because the court instructed the jury on both statutory definitions of the crime, while the indictment alleged that the defendant committed the crime in one manner.[9] The Court held the trial court's failure to instruct the jury to limit its consideration to the method specified in the indictment violated due process.[10] In the case sub judice, the charge stated that the jury had to find that the defendant had committed a substantial step toward the commission of the crime in Gwinnett County, while the indictment stated that the defendant had committed a substantial step by causing the applications to be submitted. Brown argues that under *Dukes*, the court was required to instruct the jury to limit its consideration to the substantial step alleged in the indictment. Determining harm from an allegedly erroneous jury instruction is accomplished by examining the charge as a whole.[11] Reviewing the charge as a whole, and mindful that the jury was read the indictment along with the other instructions, we find that no miscarriage of justice occurred. The jury had proper guidance in determining whether the substantial step had been committed in Gwinnett County.

3. In enumeration of error three, Brown asserts that the evidence was insufficient to establish venue in Gwinnett County beyond a reasonable doubt as to three of the four counts. Again, we disagree, and we find that there was sufficient evidence to support a finding of proper venue on all four counts.

The evidence shows that Brown, Barron, and Baughn all worked at the Gwinnett County American Express office. For the two counts

---

[7] (Citation and punctuation omitted.) *Johnson v. State*, 276 Ga. 57, 60 (573 SE2d 362) (2002).

[8] 265 Ga. 422 (457 SE2d 556) (1995).

[9] Id. at 423.

[10] Id. at 424.

[11] *Drake v. State*, 272 Ga. 797, 799 (3) (537 SE2d 336) (2000).

relating to Barron's submission, the record shows that Brown brought the application forms to Barron's office and that Barron completed and signed the forms. Baughn's April 1996 application included the address of that Gwinnett County office. Reviewing the evidence in a light most favorable to the verdict, we find it sufficient to support venue.[12]

4. In enumeration of error four, Brown asserts that the trial court erred by denying Brown's motion to strike for cause juror Lewis Massey. Massey served the State of Georgia for eight years, including three as Georgia Secretary of State. During voir dire, he admitted to being a friend of Attorney General Thurbert Baker, whose office prosecuted the case. Initially, when probed by defense counsel, Massey expressed concern about his impartiality. Later in voir dire, however, Massey indicated that he believed he could listen to the evidence in Brown's case and make a decision based upon the evidence and not on relationships that were outside the courtroom. He also indicated he had seen Brown before and, after being reminded by Brown, that he had met Brown while she was campaigning for State Senator Ralph David Abernathy. Massey was the chief elections officer who decided that Abernathy could not be on the ballot because he wrote a bad check to the Democratic party when paying his fees to qualify to run for reelection. Massey did not remember the circumstances of their meeting until Brown reminded him.

Brown contends that Massey's service to the state and his relationship to the Attorney General caused him to be prejudiced in favor of the prosecution, so that the trial court should have granted her motion to strike. Trial courts exercise broad discretion in qualifying jurors, and, on appeal, we will not disturb that discretion in the absence of manifest abuse.[13] "In order to disqualify a juror for cause, it must be established that the juror's opinion was so fixed and definite that it would not be changed by the evidence or the charge of the court upon the evidence. . . . It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court."[14] This Court has previously found that a juror's assurances to this effect can overcome, for example, a strong feeling against drinking and driving in a DUI case.[15] Similarly, in *Morrow v. State*,[16] the Supreme Court found no error in the trial court's refusal to excuse a juror who had been a sorority sister of the district attorney, where the juror "said [the] relationship would not affect her and that

---

[12] See *Reynolds v. State*, 265 Ga. App. 776 (595 SE2d 606) (2004).

[13] *Greene v. State*, 268 Ga. 47, 50 (485 SE2d 741) (1997).

[14] (Citation omitted.) *Klaub v. State*, 255 Ga. App. 40, 47 (3) (564 SE2d 471) (2002).

[15] *Heath v. State*, 223 Ga. App. 680, 682 (3) (478 SE2d 462) (1996).

[16] 272 Ga. 691 (532 SE2d 78) (2000).

she could set everything aside and decide the case only on the merits."[17] The relationship in *Morrow* is akin to the one under scrutiny in the case at bar, and during voir dire Massey gave assurances that he would not be affected by relationships outside the courtroom and would be able to make a decision based on the evidence.

Moreover, Brown failed to show bias or prejudice resulting from her encounter with Massey. As Massey did not recall their meeting, he did not associate Brown with Senator Abernathy, and only remarked that she looked familiar. Again, based on Massey's assurances that he could decide the case based on the evidence and not on relationships outside the courtroom, the trial court did not abuse its discretion in refusing to strike him for cause.

5. In enumeration of error five, Brown contends that the trial court erred by failing to charge the jury on false swearing, OCGA § 24-9-85 (b), which embodied her sole defense. That Code section states that "[i]f a witness shall willfully and knowingly swear falsely, his testimony shall be disregarded entirely, unless corroborated by circumstances or other unimpeached evidence."[18] Brown argues that the charge was warranted by evidence of false statements made by Barron to investigators as well as by his signatures on the applications. "In order to make this provision applicable it must appear, among other things, that the witness admits, on the trial, that he wilfully and knowingly swore falsely, or the testimony must be such as to render the purpose to falsify manifest."[19] However, none of the statements or signatures were made under oath, and no such admissions were made. Accordingly, the trial court did not err in failing to charge on false swearing.[20]

6. Brown next contends that the trial court erred by denying her motion to dismiss because the Attorney General's office did not have lawful authority to investigate and prosecute her. Brown argues that OCGA § 45-15-18, which empowers the Governor to direct the Attorney General to investigate the affairs of anyone dealing with the state and to prosecute criminal and civil actions against those who cause damage or injury to the state, should be interpreted to mean that such an investigation is not authorized in the absence of an advance directive from the Governor. Brown maintains that, because the Governor did not issue the directive in this case until shortly before she was indicted, the Attorney General's investigation was unauthorized. We find this argument meritless.

---

[17] Id. at 698-699 (7).

[18] OCGA § 24-9-85 (b).

[19] (Citation and punctuation omitted.) *Warnock v. State*, 195 Ga. App. 537, 538 (1) (394 SE2d 382) (1990).

[20] Id.

OCGA § 45-15-17 (a) authorizes the Attorney General to commence investigations into matters related to the state, and the investigation into "Let's Act" began with the Governor's grant of $10,000 to that organization on September 11, 1995. Therefore, the Attorney General's investigation was permitted under this Code section. Finally, we reject Brown's argument that the Attorney General should not have been allowed to prosecute the case, as OCGA § 45-15-3 (3) provides that the Attorney General will represent the state in criminal actions when required to do so by the Governor.

7. Lastly, Brown argues that the trial court erred by denying her motion for a continuance based upon the failure of American Express to comply with her subpoena for certain records and documents. The record reflects, however, that Brown sought dismissal of the indictment as a discovery sanction for American Express's failure to produce the requested documents, as ordered by the court. Although the court denied the motion to dismiss at the pretrial hearing, the court also offered to revisit the issue if it became apparent during trial that the defense had been denied relevant documents. Brown did not renew the motion during trial when cross-examining Craig concerning American Express's failure to produce the records, which Brown claimed were relevant to show that she was "singled out" for prosecution by American Express. In any event, the court sustained the state's relevancy objection to that line of questioning during cross-examination.

Although Brown contends that her trial was rendered fundamentally unfair by the trial court's actions, she has failed to cite any authority to support this point or to show the relevance of the documents she was unable to obtain. As such, this enumeration is deemed abandoned pursuant to Court of Appeals Rule 27 (c) (2).[21]

*Judgment affirmed. Blackburn, P. J., and Barnes, J., concur.*

DECIDED JULY 1, 2004 —
RECONSIDERATION DENIED JULY 21, 2004 — 

*Lenzer & Lenzer, Robert W. Lenzer, Thomas P. Lenzer*, for appellant.

Monica Brown, *pro se.*

*Thurbert E. Baker, Attorney General, R. Javoyne Hicks, Assistant Attorney General*, for appellee.

---

[21] See *Tuten v. State*, 242 Ga. App. 223, 228 (9) (529 SE2d 221) (2000).