### A98A2095. JONES v. THE STATE.
(511 SE2d 883)

McMURRAY, Presiding Judge.

Defendant was charged in an indictment with armed robbery, kidnapping, and two counts of aggravated assault during the holdup of a convenience store. Viewed in the light most favorable to the jury's verdicts, the evidence revealed the following:

Defendant was captured on videotape as he entered a Speedway convenience store at Lee Road and Interstate 20 in Douglas County, Georgia, at approximately 3:00 a.m. Donald William Florville, the 65-year-old cashier, was working the store alone. Defendant "slapped his chest like this (indicating). He said you see I've got a bulge here and that bulge is a gun. And he says if I have to use it I will. And he said now I tell you what I want you to do. He said I want you to empty both cash registers and put the money in a paper bag and hand it to me. . . . [Florville] went over to the other register and started taking the money out and putting it in . . . one of those brown paper bags . . . [a]nd [defendant] kept hollering . . . to hurry up, hurry up. . . . [W]hen [defendant] said he had the gun, he then slipped his hand underneath his light jacket he had on and when he slapped the bulge as he calls it[,] he wasn't hitting skin. He was hitting something hard, such as a holster or a weapon. Then when he stuck his hand up underneath the jacket he gripped. [Based on

Florville's 11 years experience as a military policeman, he] took it that [defendant] was gripping the round edge of a pistol and [Florville] believed [defendant] had a pistol." Defendant left with more than $400. Florville never actually saw defendant display a gun.

Deputy Timothy Bearden of the Douglas County Sheriff's Office happened to be parked across the street from this convenience store. His curiosity was aroused when defendant drove in and backed his vehicle into a parking space. "As [defendant] started to come out of the store he took about one step and broke off into a run to his vehicle. . . . [D]ue to [his ten years of] law enforcement experience [Deputy Bearden had] a pretty good idea that a robbery probably just took place," so he pursued defendant's vehicle. When Deputy Bearden called in the license plate, he was advised to use caution because an armed robbery at that convenience store had just been reported and the deputy was pursuing the suspect vehicle. Defendant exited I-20 at Thornton Road "and at that time [Deputy Bearden] saw [defendant's] brake lights come on. He [defendant] struck another deputy patrol vehicle that was on Thornton Road. He hit them T-boned, and when [Deputy Bearden] exited [his] vehicle . . . there was a lot of smoke and steam. [He] couldn't exactly see the vehicles, and that's when [Deputy Bearden] heard a couple of shots being fired [so he] took cover at that time." When defendant drove back onto I-20, Deputy Bearden stayed behind and checked on Deputy Partin, who was injured in the crash.

Douglas County Sheriff's Deputy Damon Partin was on Thornton Road in a marked patrol vehicle when the dispatcher reported an armed robbery at the convenience store as well as Deputy Bearden's report that he was following the suspect's vehicle on the interstate going east toward Atlanta. As he got on the ramp to enter the interstate, Deputy Partin saw defendant exit at Thornton Road followed by Deputy Bearden and a uniformed officer in a marked patrol car. Deputy Partin "turned around and came back up the ramp with [his blue] lights on. When [he] got to the top of the ramp . . . [defendant's] maroon station wagon came straight through the intersection and hit [Deputy Partin's] car [which was] stopped at the intersection. . . ." The patrol car was not positioned as if to blockade defendant's path. "There are several lanes [at this intersection] and [Thornton Road] is six lanes wide." Defendant was in the middle lane. But Deputy Partin could not move his vehicle out of defendant's way; defendant "was moving too quickly. [Deputy Partin] didn't really know which way [defendant] was going. [The deputy] just stopped, and there was quite a distance . . . on the left side. . . . There was a little bit of room [on the other side], but at the speed [defendant] was going [Deputy Partin] thought [defendant] was going to go around

[him]." Stunned after the impact, Deputy Partin never fired his gun.

The jury acquitted defendant of Count 2, kidnapping, but found him guilty of Count 1, armed robbery, and Counts 3 and 4, aggravated assault against the pursuing deputies. The trial court subsequently granted defendant's motion for a directed verdict of acquittal involving Count 3. Defendant's motion for new trial was denied, and this appeal followed. *Held*:

1. The State sought to introduce 13 prior instances where defendant participated in an armed robbery. After the hearing mandated by Uniform Superior Court Rule 31.3, the trial court admitted 12 instances of defendant's prior convictions for armed robbery as probative of defendant's "identity, modus operandi, bent of mind, and [as] very relevant to the issue of . . . whether or not a weapon was in fact used or not." These evidentiary rulings are enumerated as error.

(a) Defendant first contends his prior convictions for armed robbery (several based on guilty pleas) were not admitted for a proper purpose. "A rote recitation of any and all permissible purposes will not suffice." *Rodriguez v. State*, 211 Ga. App. 256, 258 (4) (a) (439 SE2d 510). Likewise, "[a] vague 'finding' of an unspecified 'proper, specific purpose' is wholly inadequate to apprise the defendant of the . . . grounds upon which such evidence is admissible." Id. at 259. But in the case sub judice, the trial court did enunciate explicit bases for admitting defendant's prior convictions. While the trial court found multiple bases, they are neither vague nor a mere rote recitation of any and all permissible purposes.

(b) "Independent crimes are admissible to show motive, intent, plan, identity, bent of mind or course of conduct. In order for any independent acts to be admissible it must be shown that the defendant was the perpetrator of the independent crime and that there is sufficient similarity of the former independent crime that it tends to prove the latter crime. While [USCR] 31.3 speaks of similar transactions, the issue of admissibility of extrinsic transactions has never been one of mere similarity. It is, rather, relevance to the issues in the trial of the case." (Citations and punctuation omitted.) *Cole v. State*, 216 Ga. App. 68, 69 (1), 70 (453 SE2d 495).

The trial court in this case correctly concluded that defendant's history of guilty pleas to armed robbery was substantially relevant to the appropriate limited purpose of proving modus operandi or course of conduct, specifically whether a gun was in fact used in this instance. See *Hodnett v. State*, 269 Ga. 115, 118 (5) (498 SE2d 737) (unrelated shooting relevant to show course of conduct and bent of mind to carry handgun); *Haywood v. State*, 256 Ga. 694, 696 (2) (353 SE2d 184) (unrelated shooting relevant to show bent of mind and propensity to use gun); *Sport v. State*, 253 Ga. 689 (1), 690 (324 SE2d 184) (unrelated shooting demonstrated bent of mind and propensity

to use pistol).

(c) The trial court's reasoning that defendant's long list of armed robbery convictions is probative of the perpetrator's identity is in error. "A much greater degree of similarity between the charged crime and the uncharged crime is required when the evidence of the other crime is introduced to prove identity than when it is introduced to prove a state of mind. Much more is demanded than the mere repeated commission of crimes of the same class, such as repeated murders, robberies or rapes. The pattern and characteristics of the crimes must be so unusual and distinctive as to be like a signature." (Citations and punctuation omitted.) *Cole v. State*, 216 Ga. App. 68, 69 (1), 70, supra. The State failed to prove that defendant's repeated guilty pleas to armed robbery offered characteristics so unusual and nearly identical in method as to earmark this offense as the handiwork of any particular person. Robbing a convenience store at gunpoint is not in the nature of a signature so as to be proof of the perpetrator's identity. Id. But we must test for harm as well as error. In this case, defendant took the stand and admitted the robbery (while denying the threat of a gun). Consequently, the admission of "extrinsic acts" evidence under the erroneous identity theory is clearly harmless in this instance, because it is highly probable the error did not contribute to the verdict. *Johnson v. State*, 238 Ga. 59, 61 (230 SE2d 869).

2. The trial court gave a preliminary instruction, informing the jurors that their consideration of extrinsic acts evidence was limited to whether it proved "identity and [the] state of mind element charged in the indictment." Defendant objected, contending these instructions exceeded the limited purposes for which the court admitted evidence of defendant's repeated armed robberies. The trial judge repeated this charge, again enumerating identity and state of mind as the proper limited purposes for which the similar crimes evidence was admitted.

(a) On appeal, defendant first argues the admission of similar transactions evidence without accompanying limiting instructions is harmful as a matter of law, relying on *Lunberry v. State*, 231 Ga. App. 706 (500 SE2d 625), and *Belt v. State*, 227 Ga. App. 425 (489 SE2d 157), rev'd, *State v. Belt*, 269 Ga. 763, 764 (505 SE2d 1). There is no longer any "per se" error involving limiting instructions regarding similar transactions. In *State v. Belt*, 269 Ga. 763-764, the Supreme Court of Georgia reaffirmed the rule that, when evidence is admitted for one purpose, it is not error for the court to fail to instruct the jury to limit its consideration to the one purpose for which it is admitted, in the absence of a request to so instruct the jury. Defendant requested no clarification in the case sub judice.

(b) True, the limiting instruction *as given* in this case injected

the abstractly correct but factually extraneous notion of *state* of mind while ignoring the authorized purpose of course of conduct or *bent* of mind. But this reference to state of mind could not possibly have misled the jury into reaching a guilty verdict by some theory not supported by the evidence. Consequently, the trial court's limiting instruction given contemporaneously with the admission of similar transactions evidence, while not a model of clarity, was not error requiring a new trial. *Hightower v. State*, 210 Ga. App. 386, 387 (3), 388 (436 SE2d 28).

3. Evidence that a crack pipe with suspected cocaine residue was found in a fanny pack discovered in the car defendant abandoned was introduced at trial over defendant's objection that this introduced prejudicial facts not contained in the case on trial. On appeal, defendant contends this amounted to the improper introduction of unnoticed similar crimes evidence, without the necessary pretrial hearing mandated by USCR 31.3. This contention is without merit.

"Evidence discovered in [defendant's vehicle], implicating him in [an uncharged drug offense], was evidence of the res gestae and as such is expressly excluded from the procedural requirements applicable to separate but similar crimes. [USCR] 31.3 (E); *Grace v. State*, 262 Ga. 746, 747 (1) (425 SE2d 865). Substantively, the State is entitled to present evidence of the entire res gestae and such evidence is not rendered inadmissible despite the fact that the character of the accused is incidentally implicated. *Chambers v. State*, 250 Ga. 856, 859 (2) (302 SE2d 86)." *Galbreath v. State*, 213 Ga. App. 80, 83 (3), 84 (443 SE2d 664).

4. Defendant enumerates the general grounds as to his conviction for armed robbery, arguing the offense requires that an offensive weapon or an item with the appearance of an offensive weapon be used during the theft, and the evidence fails to establish this. We disagree on both the law and the evidence.

"OCGA § 16-8-41 (a) provides that a person commits the offense of armed robbery when, with the intent to commit theft, he takes property of another by use of an offensive weapon, or any replica, article, or device having the appearance of such weapon. The statute includes concealed offensive weapons provided there is either a physical manifestation of the weapon or some evidence from which the presence of a weapon may be inferred. The question is whether the defendant's acts created a reasonable apprehension on the part of the victim that an offensive weapon was being used, regardless of whether the victim actually saw the weapon. In the case at bar, the evidence authorized a finding that [defendant] robbed [Florville] using a replica, article, or device having the appearance of an offensive weapon [as charged in the indictment], regardless of what it was, so as to create a reasonable apprehension on the part of

[Florville] that it was [in fact] an offensive weapon." (Citations and punctuation omitted.) *Johnson v. State*, 195 Ga. App. 56, 57 (1) (a) (392 SE2d 280).

*Judgment affirmed. Blackburn and Eldridge, JJ., concur.*

DECIDED FEBRUARY 9, 1999.

*Jill L. Anderson, Lee W. Fitzpatrick*, for appellant.
*David McDade, District Attorney, William H. McClain, Assistant District Attorney*, for appellee.