## A02A0571. HAMMOND v. THE STATE.
(565 SE2d 873)

MILLER, Judge.

Franklin D. Hammond was convicted of conspiracy to traffic in methamphetamine, trafficking in methamphetamine, conspiracy to manufacture methamphetamine, manufacturing methamphetamine, conspiracy to sell and distribute methamphetamine, and selling and distributing methamphetamine. After the denial of his motion for new trial, Hammond filed this appeal. Hammond asserts that the trial court erred by denying his motion to suppress, by denying his motion to recuse an assistant district attorney (ADA), and by allowing certain witnesses to testify despite the State's noncompliance with OCGA § 17-16-8 (a). He also claims that the trial court erroneously denied his motion for directed verdict of acquittal. After review, we find no merit to any of these purported errors and therefore affirm.

When examined in a light most favorable to the verdict, the evidence established that in August 2000, police arrested Wayman Knight for trafficking in methamphetamine. After agreeing to cooperate with authorities, Knight then implicated Charles Kingsmill and Hammond. Knight told police that he had been dealing with Hammond for some time and that Hammond had introduced him to Kingsmill. Knight led investigators to an automotive shop from which methamphetamine was being manufactured and sold. Under police supervision, Knight then set up and executed a controlled drug deal with Kingsmill in which he purchased $8,000 worth of methamphetamine from Kingsmill. The consummation of that drug transaction resulted in the arrest of Kingsmill and others, and the seizure of the methamphetamine manufacturing operation ("meth lab") and a large quantity of drugs, money, and guns.

All of those arrested agreed to cooperate and admitted their involvement in the meth lab and sales. Consenting to testify against Hammond were Knight, Robert Manus (the owner of the shop and a participant in the meth lab), Kingsmill, and Kingsmill's wife. They each implicated Hammond as having a major role in the drug operation. Shortly thereafter, another local methamphetamine dealer was arrested for trafficking and also implicated Hammond as a major participant in the methamphetamine business.

As a result of the drug investigation, the police secured an arrest warrant for Hammond and a search warrant for Hammond's residence. During the execution of the warrant, police found a large amount of cash, an address book that contained Kingsmill's name and telephone numbers, incriminatory financial documents and tax records, and several firearms. Based on this evidence and the direct testimony of Hammond's accomplices implicating Hammond, Ham-

mond was convicted on the six trafficking and distribution charges referenced earlier.

1. Hammond contends that the trial court erred in failing to grant his motion to suppress evidence that the State gathered in reliance upon what he terms a fatally defective warrant. He claims that the officer who procured the search warrant elected not to inform the judge that he had "actually made a deal with the informant to reduce a charge of trafficking, with a mandatory minimum sentence of ten years and a two hundred thousand dollar fine, to misdemeanor possession of marijuana with a maximum sentence of twelve months in prison."

In determining the existence of probable cause for a search warrant, the magistrate or issuing judge is merely required to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the veracity and basis of knowledge of any person supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. *Gordon v. State*, 248 Ga. App. 776, 777 (546 SE2d 925) (2001). Thereafter, when a trial court finds there was probable cause for the issuance of the warrant by the magistrate, the trial court's factual findings will be upheld unless clearly erroneous. *Bryant v. State*, 268 Ga. 616, 618 (6) (491 SE2d 320) (1997). This Court's role on review is to determine whether the magistrate had a substantial basis for deciding that probable cause existed to issue the search warrant. *Gordon*, supra, 248 Ga. App. at 777-778. When reviewing the trial court's ruling on a motion to suppress, we must construe the evidence most favorably toward upholding the court's ruling. *Floyd v. State*, 237 Ga. App. 586 (516 SE2d 96) (1999). And, in so doing, we must defer to the trial court's determination on the credibility of witnesses, and the trial court's ruling on disputed facts must be accepted unless it is clearly erroneous. *Bellamy v. State*, 243 Ga. App. 575, 577 (1) (b) (530 SE2d 243) (2000).

When considered within that analytical framework, the evidence offered at the motion hearing showed that during an investigation of illegal narcotics, the arrest of Knight led to incriminating information about others in a drug ring. After Knight told investigators that Kingsmill had a meth lab at his automobile repair shop, police arranged for Knight to set up a controlled buy of $8,000 worth of methamphetamine from Kingsmill. After Kingsmill sold the drugs to Knight, Kingsmill was arrested, and a search warrant was obtained for his shop and the residence. A sergeant testified that during the execution of the warrant, investigators discovered chemicals and equipment used to produce methamphetamine including homemade gas chambers, anhydrous ammonia, ether, filters, and other items used in the process. These discoveries led to the arrests of Kingsmill,

Kingsmill's wife, and five other individuals. After interviewing the arrestees and determining that their accounts corroborated each other's statements, and after comparing their statements to Knight's and based on the additional confirmation obtained by the physical evidence collected as to the meth lab, the sergeant applied for a search warrant. A supplemental report by an investigator was added to the warrant application. The investigator advised that "Affiant knows that within the past year Hammond's son Danny had been arrested twice for trafficking in methamphetamine along with his grandson." This evidence was sufficient to show that the issuing magistrate had a substantial basis for finding there was a reasonable probability that contraband would be found on Hammond's property. *Perkins v. State*, 220 Ga. App. 524-525 (1) (469 SE2d 796) (1996).

Without question, notwithstanding the contrary claim, the search warrant was not obtained on the bare word of a lone informant who had entered into an undisclosed deal with prosecutors and whose information lacked any independent corroboration. Compare *Robertson v. State*, 236 Ga. App. 68, 70 (510 SE2d 914) (1999). The trial court correctly determined that, even had the deal been revealed, there was more than a substantial basis for the decision to issue the warrant and properly denied the motion to suppress. See *Gordon*, supra, 248 Ga. App. at 779.

2. Hammond asserts that the trial court erred in denying his motion to recuse the ADA from the case. He complains that the ADA actively participated in executing the warrant and interviewed all of his co-defendants. He further argues that the ADA was a potential witness and, therefore, was ethically bound to recuse himself and should have "appointed a 'less interested' attorney to prosecute the case."

The ADA was not required to recuse himself. Unlike the case upon which Hammond relies, the ADA was neither the defense counsel nor did he testify as a defense witness. Compare *Wright v. State*, 267 Ga. 496 (2) (a) (480 SE2d 13) (1997). Nor does *Mobley v. State*, 265 Ga. 292, 300 (18) (b) (455 SE2d 61) (1995), support Hammond's position. The Supreme Court in *Mobley* held that during the sentencing phase, prosecutors are precluded from testifying about the reasons for rejecting plea offers. Id. at 300. That holding does not apply here.

3. Hammond asserts that the trial court committed reversible error by allowing certain witnesses to testify despite the State's noncompliance with OCGA § 17-16-8 (a). He argues that because the State failed to provide him with the dates of birth for all of its witnesses, he, at a minimum, was entitled to the continuance that he requested. He asserts that without that information, he was unable to conduct criminal background checks on the prosecution witnesses.

He further claims that neither the discovery statute nor *State v. Dickerson*, 273 Ga. 408, 410 (1) (542 SE2d 487) (2001), exempts the State from supplying the birth dates of its law enforcement witnesses.

Here, the State attorney failed to provide the defense with some of the requisite information. As a consequence, the trial court refused to allow one witness to testify, and the prosecutor agreed not to call a second witness. The trial court also directed that defense counsel be provided with the opportunity to interview yet a third witness before the trial began. Of the ten witnesses who were permitted to testify for the prosecution, five were law enforcement personnel and apparently fit within the ambit of subsection (b)'s more limited disclosures of only current work location and work phone number. See OCGA § 17-16-8 (b). Hammond, however, claims that one of the five was not a law enforcement officer in that she was a forensic chemist employed by the U. S. Drug Enforcement Administration in Miami. Even assuming without deciding that she was not a "law enforcement officer" within the meaning of OCGA § 17-16-8 (b), we hold that defense counsel admitted that he had been furnished with a copy of the crime lab report bearing her signature. Nor has Hammond shown how he was harmed since none of the drugs tested and identified by the chemist were found in Hammond's possession and he was not convicted of possession.

Of the other five witnesses, only Knight had a prior criminal history, and that criminal past had been fully disclosed to the defense before trial. While it is true that the State failed to provide the defense with the requisite information as to Knight, the trial court found no harm since information as to Knight's criminal history appeared in a transcript of an interview and a copy of the transcript had been provided to the defense. Moreover, the trial transcript showed that Knight was thoroughly cross-examined about his criminal past. While on cross-examination, Knight admitted to being on parole at the time of the drug operation and conceded that he had obtained a favorable deal from the prosecutor on the charges in Coweta County.

Finally, although Hammond claims that he was harmed by the prosecutor's reference to the anticipated testimony of witnesses who did not testify, opening statements were not recorded. Nor was a transcript recreated after the fact by agreement as authorized by OCGA § 5-6-41. When an appellant seeks to prove error in the trial proceedings, the burden is on him to produce a transcript of the allegedly erroneous matter. *Mindock v. State*, 187 Ga. App. 508 (1) (370 SE2d 670) (1988). This he failed to do.

4. Hammond asserts that he was entitled to a directed verdict of acquittal because the State failed to tender a single piece of evidence

that was identified as methamphetamine. He claims that the State failed to prove that he ever possessed methamphetamine on his person or on his property. Hammond's somewhat circuitous argument overlooks the fact that he was neither indicted for nor convicted of possession. Actual physical possession is not required to prove trafficking when, as here, actual active participation in the possession of such illegal drugs so as to be a party to the crime of trafficking had been shown. See *Green v. State*, 187 Ga. App. 373, 375 (2) (370 SE2d 348) (1988). Hammond was tried and convicted of charges emanating from the manufacture, sale, and distribution of methamphetamine, charges that were amply supported by the record. Cf. *Gamble v. State*, 223 Ga. App. 653, 654 (1) (478 SE2d 455) (1996).

*Judgment affirmed. Blackburn, C. J., and Johnson, P. J., concur.*

DECIDED MAY 28, 2002.

*Sexton & Morris, Lee Sexton*, for appellant.

*Peter J. Skandalakis, District Attorney, Raymond C. Mayer, Assistant District Attorney*, for appellee.