A06A1099. WESSON v. THE STATE.
(631 SE2d 451)

BLACKBURN, Presiding Judge.

Charles Martin Wesson was convicted, following a jury trial, of trafficking,[1] manufacturing,[2] and possession of methamphetamine.[3] He appeals his conviction and the denial of his motion for new trial, arguing that the trial court erred in (1) denying his motion for a directed verdict of acquittal on the trafficking charge based on insufficiency of the evidence; (2) improperly charging the jury on trafficking; (3) denying his motion to suppress illegally obtained evidence; (4) improperly allowing the State to introduce evidence of

---

[7] *Scott v. Scott*, 227 Ga. App. 346, 350-351 (3), (4) (489 SE2d 117) (1997).
[1] OCGA § 16-13-31 (f). This subsection was added as part of the 2003 amendments to OCGA § 16-13-31 and became effective on May 15, 2003.
[2] OCGA § 16-13-30 (b).
[3] OCGA § 16-13-30 (a).

other crimes; and (5) failing to merge the trafficking and manufacturing sentences. For the reasons set forth below, we vacate Wesson's sentence on the offense of manufacturing methamphetamine but otherwise affirm the trial court's judgment.

1. We first address Wesson's contention that the trial court erred in denying his motion for a directed verdict of acquittal based on insufficiency of the evidence. The standard of review for the denial of a motion for a directed verdict of acquittal is the same as for determining the sufficiency of the evidence to support a conviction. *Hash v. State.*[4] We view the evidence in the light most favorable to the jury's verdict, and the defendant no longer enjoys the presumption of innocence. *Short v. State.*[5] We do not weigh the evidence or determine witness credibility, but only determine if the evidence was sufficient for a rational trier of fact to find the defendant guilty of the charged offense beyond a reasonable doubt. *Jackson v. Virginia.*[6]

So construed, the evidence showed that on May 27, 2003, several officers from the Chattooga County Sheriff's Department went to Wesson's residence in an attempt to locate Wesson's son, who had been arrested the night before on drug charges but had escaped from police custody. Upon arriving at Wesson's residence, which consisted of two trailers somewhat attached by a porch, Officers Schrader and Womack were met by Wesson just outside his front door. Officer Schrader asked for permission to search the premises for Wesson's son, and Wesson consented. During his walk through the premises, Officer Schrader noticed in plain view a bucket with two bottles of Heet brand antifreeze, an item which he associated with the clandestine manufacture of methamphetamine. At the same time, one of the officers, who had not approached the trailer but had remained in the yard, noticed in plain view several discarded items that he associated with the manufacture of methamphetamine, including empty ephedrine packets, some tubing, and Coleman fuel cans. Based on this evidence, the officers asked Wesson for permission to conduct a more thorough search of the premises, but Wesson refused. Consequently, Officers Schrader and Womack left to obtain a search warrant while the other officers remained to secure the premises.

After securing the search warrant, Officers Schrader and Womack returned to Wesson's residence and were met there by members of the Georgia Bureau of Investigation, who were more experienced in collecting and processing evidence from suspected methamphetamine labs. The subsequent search of Wesson's premises yielded

---

[4] *Hash v. State*, 248 Ga. App. 456, 457 (1) (546 SE2d 833) (2001).
[5] *Short v. State*, 234 Ga. App. 633, 634 (1) (507 SE2d 514) (1998).
[6] *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SC 2781, 61 LE2d 560) (1979).

numerous items indicative of the clandestine manufacture of meth-amphetamine, including several bottles of bi-level liquid (a liquid consisting of methamphetamine and fuel and indicative of the last stage of processing before the substance forms a usable powder), muriatic acid, fuel, red phosphorus, plastic tubing, turpentine, an electric skillet, and bottles of ephedrine and xenadrine. In addition, samples of some of the liquid found in the bottles, as well as a sample of a powdery substance found in a coffee filter, tested positive for methamphetamine. Wesson, along with several others present at his residence, was arrested and was later indicted on charges of traffick-ing, manufacturing, and possessing methamphetamine.

Following the State's case, Wesson moved for a directed verdict of acquittal on the ground that the evidence was insufficient to support a conviction. His motion was denied, and he was found guilty on all three counts. In both his motion for new trial and his appeal, he argues that the trial court erred in failing to grant a directed verdict as to the trafficking charge. We disagree.

OCGA § 16-13-31 (f) provides in part: "Any person who know-ingly manufactures methamphetamine, amphetamine, or any mix-ture containing either methamphetamine or amphetamine, as de-scribed in Schedule II, in violation of this article commits the felony offense of trafficking methamphetamine or amphetamine." Given the numerous items of evidence seized from Wesson's property that were indicative of the clandestine manufacture of methamphetamine, as well as the samples of substances that tested positive for metham-phetamine, sufficient evidence existed to support Wesson's convic-tion of trafficking methamphetamine pursuant to OCGA § 16-13-31 (f). See *Jackson*, supra, 443 U. S. at 319 (III) (B).

Nevertheless, Wesson argues that his conviction should be re-versed because the indictment does not include the term "trafficking" and makes no reference to OCGA § 16-13-31 (e). He further argues that the indictment does not state that a defendant must be found with 28 grams of methamphetamine to be convicted of trafficking, that no evidence was introduced at trial as to the amount of meth-amphetamine seized from his premises, and that the trial court erred by not charging the jury with regard to the 28-gram requirement of OCGA § 16-13-31 (e). These arguments are without merit.

The fact that the indictment did not include the specific term "trafficking" is irrelevant. The indictment did, in fact, cite OCGA § 16-13-31, and more importantly tracked the language of OCGA § 16-13-31 (f) and was therefore sufficient. See *Raheem v. State*.[7] Moreover, as mentioned, Wesson was specifically indicted on and

---

[7] *Raheem v. State*, 275 Ga. 87, 89 (2) (560 SE2d 680) (2002).

convicted of trafficking methamphetamine pursuant to OCGA § 16-13-31 (f), which, unlike OCGA § 16-13-31 (e), does not require that a defendant be in possession of a specific amount of methamphetamine. Thus, it would not have been proper for the indictment to state the elements of OCGA § 16-13-31 (e), as Wesson argues, nor was it necessary for the State to prove those elements to obtain a conviction. Furthermore, Wesson did not object or reserve objections to the jury charges and therefore has waived appellate review of those charges as given. See *Brown v. State*.[8] Regardless, given that jury charges must be tailored to the indictment, the trial court properly charged the jury on the offense of trafficking pursuant to OCGA § 16-13-31 (f). See *Morrissette v. State*.[9] Accordingly, the trial court did not err in denying Wesson's motion for a directed verdict of acquittal.

2. Wesson contends that the trial court erred in denying his motion to suppress illegally-seized evidence, arguing that the officers searched his premises without a warrant and later drafted a false affidavit to obtain a search warrant and thereby conceal their misconduct. "In considering an appeal from denial of a motion to suppress, this Court construes the evidence in favor of the trial court's ruling, and we review de novo the trial court's application of the law to undisputed facts." *Smith v. State*.[10] Additionally, "we must defer to the trial court's determination on the credibility of witnesses, and the trial court's ruling on disputed facts must be accepted unless it is clearly erroneous." *Hammond v. State*.[11] Moreover, in reviewing the denial of a motion to suppress, we consider all the evidence of record, including evidence introduced at trial. *McCray v. State*.[12]

At the hearing on Wesson's motion to suppress and at trial, the evidence showed that Wesson consented when the officers came to his residence and asked for permission to search the premises for his fugitive son. During this limited search, two officers noticed in plain view items that they associated with the clandestine manufacture of methamphetamine. Based on their viewing of these items, the officers asked Wesson for permission to conduct a specific search for methamphetamine. After Wesson refused, the officers sought and were granted a search warrant on the ground that the viewed items provided probable cause to suspect that a clandestine methamphetamine lab was being operated on Wesson's premises.

The plain view doctrine authorizes a police officer to seize an illegal item if the officer is lawfully in a place where he can see the

---

[8] *Brown v. State*, 268 Ga. App. 629, 632 (2) (602 SE2d 158) (2004).

[9] *Morrissette v. State*, 229 Ga. App. 420, 425 (3) (a) (494 SE2d 8) (1997).

[10] *Smith v. State*, 262 Ga. App. 614, 615 (585 SE2d 888) (2003).

[11] *Hammond v. State*, 255 Ga. App. 549, 550 (1) (565 SE2d 873) (2002).

[12] *McCray v. State*, 268 Ga. App. 84 (601 SE2d 452) (2004).

item and if he has a lawful right of access to it. *State v. David.*[13] "An officer gains lawful access to an item in plain view by obtaining a search warrant, obtaining consent to search, or the existence of exigent circumstances." *Benton v. State.*[14] Furthermore, "[i]t is well settled that objects falling in the plain view of an officer who has a right to be in the position to have that view are subject to seizure and may be introduced in evidence." (Punctuation omitted.) *Saadatdar v. State.*[15]

Here, given Wesson's consent to the limited search of the premises, the officers were lawfully in a position to see in plain view the items they associated with the clandestine manufacture of methamphetamine. See *Benton,* supra, 240 Ga. App. at 244 (1). The viewing of these items, in turn, provided the officers with the probable cause necessary to obtain a warrant to specifically search the premises for additional evidence. See *Saadatdar,* supra, 277 Ga. App. at 340-341; *Miller v. State*[16] (probable cause only requires a practical, nontechnical probability that incriminating evidence is involved); *Gordon v. State*[17] (in determining the existence of probable cause for a search warrant, the magistrate is merely required to make a practical, common-sense decision, whether, given all the circumstances set forth in the affidavit, there is a fair probability that evidence of a crime will be found).

Wesson argues that the search was illegal because the officers actually searched his premises for evidence of methamphetamine manufacturing prior to obtaining a search warrant. Wesson proffered no evidence in support of this contention during the hearing on his motion to suppress, but at trial, he and one other witness testified that the officers' search for methamphetamine was conducted without a warrant. This evidence and the credibility of the officers and other witnesses, however, were weighed by the trial court in its ruling on Wesson's motion to suppress and his amended motion for new trial. Finding no clear error, we defer to the trial court's determination as to those issues. See *Smith,* supra, 262 Ga. App. at 615. Accordingly, the trial court's denial of Wesson's motion to suppress evidence is affirmed.

3. Wesson also contends that the trial court erred in allowing the State to introduce evidence of other crimes without complying with Uniform Superior Court Rule (USCR) 31.3. At trial, the State, over Wesson's objection, proffered Laurie Williams as a witness. Williams,

---

[13] *State v. David,* 269 Ga. 533, 535-536 (2) (501 SE2d 494) (1998).

[14] *Benton v. State,* 240 Ga. App. 243, 244 (1) (522 SE2d 726) (1999).

[15] *Saadatdar v. State,* 277 Ga. App. 339, 340-341 (626 SE2d 552) (2006).

[16] *Miller v. State,* 261 Ga. App. 618, 620 (1) (583 SE2d 481) (2003).

[17] *Gordon v. State,* 248 Ga. App. 776, 777 (546 SE2d 925) (2001).

who along with several others was arrested at Wesson's residence the same day as Wesson, testified that it was general knowledge that Wesson and his son engaged in the manufacture of methamphetamine. Wesson argues that this testimony constituted evidence of other crimes and that the trial court erred by not conducting a hearing pursuant to USCR 31.3 to determine if the evidence was being offered for appropriate purposes. We disagree.

USCR 31.3 (E) provides in part: "Nothing in this rule is intended to prohibit the state from introducing evidence of similar transactions or occurrences which are . . . immediately related in time and place to the charge being tried, as part of a single, continuous transaction." Indeed, "the State is entitled to present evidence of the entire res gestae and such evidence is not rendered inadmissible despite the fact that the character of the accused is incidentally implicated." (Punctuation omitted.) *Jones v. State.*[18] Here, Williams's testimony regarding her knowledge of Wesson's involvement in the manufacturing of methamphetamine was not evidence of a separate crime but rather constituted evidence of a continuous transaction. See *Herndon v. State;*[19] *Jones,* supra, 236 Ga. App. at 334 (3). USCR 31.3 therefore does not apply. See *Herndon,* 253 Ga. App. at 547 (2); *Jones,* supra, 236 Ga. App. at 334 (3). Accordingly, the trial court did not err in allowing the State to proffer Williams's testimony regarding Wesson's involvement in the manufacturing of methamphetamine.

4. Wesson further contends that the trial court erred in sentencing him on both the trafficking-methamphetamine and the manufacturing-methamphetamine charges, arguing that since the indictment did not adequately charge the offense of trafficking, he should have only been sentenced on the manufacturing conviction. In light of our ruling in Division 1, we disagree that the trial court erred in sentencing Wesson on the trafficking charge. However, the State concedes, and we agree, that the offense of manufacturing methamphetamine is a lesser included offense of this particular type of trafficking methamphetamine, and thus the sentences for those two offenses should have merged. See *Ellison v. State.*[20] Accordingly, Wesson's sentence on manufacturing methamphetamine is vacated, but the trial court's judgment is otherwise affirmed.

*Judgment affirmed in part and vacated in part. Mikell and Adams, JJ., concur.*

---

[18] *Jones v. State,* 236 Ga. App. 330, 334 (3) (511 SE2d 883) (1999).

[19] *Herndon v. State,* 253 Ga. App. 543, 546 (2) (559 SE2d 749) (2002).

[20] *Ellison v. State,* 265 Ga. App. 446, 449 (3) (594 SE2d 675) (2004).

DECIDED MAY 16, 2006.

*W. Benjamin Ballenger*, for appellant.

*Herbert E. Franklin, Jr., District Attorney, Bruce E. Roberts, Assistant District Attorney*, for appellee.