## A08A0419. USHER v. THE STATE.
(659 SE2d 920)

ELLINGTON, Judge.

A Clayton County jury found Walter Usher guilty beyond a reasonable doubt of aggravated assault against a person 65 years of age or older, OCGA § 16-5-21 (a) (1) (assault with intent to rape), (d); burglary, OCGA § 16-7-1; robbery, OCGA § 16-8-40; theft by taking, OCGA § 16-8-2; and battery, OCGA § 16-5-23.1. Following the denial of his motion for a new trial, Usher appeals, contending, inter alia, that the trial court erred in admitting evidence of prior bad acts to prove identity and that the evidence was insufficient to prove that the victim was at least 65 years of age, as charged in the indictment. For the reasons that follow, we reverse.

Viewed in the light most favorable to the jury's verdict,[1] the evidence shows the following. On April 5, 2002, the 91-year-old victim, who lived alone, went to sleep around 10:00 p.m. Sometime after 2:00 a.m. on April 6, someone rang her doorbell, and the victim got up and turned on the light. A man entered the house and came into her bedroom. The assailant struggled with the victim, told her to get back into bed, forcefully pushed her back on the bed, pulled down his pants, and tried to lie on the victim. Believing he planned to rape her, the victim said, "[Y]ou're too good looking [a] man to be in here trying to get an old woman like me. . . . [Do] you want me to get you a younger lady[?]" The assailant ignored the question and repeatedly slapped the victim in the face. Changing tactics, the victim asked if the assailant wanted some money. The assailant pulled his pants up and asked where her money was. The victim gave him money from her purse. Then they went together into the living room, and the victim gave him money she kept there in a can. Taking the money, the assailant left the victim's house. After the attack, the victim's face was lacerated, extensively bruised, and swollen and she had defensive wounds on her hand and arm.

Six days later, a detective asked the victim if she could identify her assailant in a six-person photographic spread that included Usher, who lived about a mile from the victim's house. The victim immediately selected Usher's picture and, in the detective's opinion, seemed "very certain" of her identification. The victim also identified Usher at trial. Although the victim was not wearing her glasses during the attack, she testified that she had seen him clearly.

After the trial court ruled that evidence of two similar transactions would be admitted for the purpose of proving Usher's identity as the perpetrator of the charged offenses, the State offered evidence of

---

[1] *Jackson v. Virginia*, 443 U. S. 307, 318-319 (III) (B) (99 SC 2781, 61 LE2d 560) (1979).

two burglaries Usher committed in September 1998. In the first, Usher stole jewelry from the home of a 51-year-old woman and two other adults who lived not very far down the street from Usher. Usher stole the jewelry while the victim was out of town and later apologized to the victim and returned some of the jewelry. Usher pled guilty to burglary. In the second burglary, Usher stole a watch from a 57-year-old woman who lived alone next door to Usher. This victim also was not home at the time of the burglary. Again, Usher confessed to the victim and apologized. Usher pled guilty to theft by receiving stolen property.

After the jury returned a guilty verdict on all counts, the trial court merged the lesser included offenses for sentencing and sentenced Usher for the offenses of aggravated assault, burglary, and robbery.

1. Usher contends that the burglaries he committed in 1998 were not unusual and distinctive enough and were not similar enough to the charged offenses to be admissible to prove his identity as the perpetrator of the charged offenses. We agree.

> In order to protect an accused and to insure him of a fair and impartial trial before an unbiased jury, we have long embraced the fundamental principle that the general character of an accused is inadmissible unless the accused chooses to put his character in issue.

(Citation omitted.) *Williams v. State*, 261 Ga. 640, 641 (2) (a) (409 SE2d 649) (1991).

> As a corollary of this fundamental principle, we have also long adhered to the rule that where an accused is on trial for the commission of a crime: proof of a distinct, independent, and separate offense is never admissible, unless there is some logical connection between the two, from which it can be said that proof of the one tends to establish the other. The rationale for the latter rule is that evidence of an independent offense or act committed by the accused is highly and inherently prejudicial, raising, as it does, an inference that an accused who acted in a certain manner on one occasion is likely to have acted in the same or in a similar manner on another occasion and thereby putting the accused's character in issue.

(Citations and punctuation omitted.) Id. See OCGA § 24-2-2 (the conduct of an accused in other transactions is generally irrelevant and inadmissible).

Evidence of similar transactions may be admissible, however, contingent upon three affirmative showings:

> (1) the evidence [is] admitted for a proper purpose; (2) there [is] sufficient evidence to establish the accused committed the independent act; and (3) there [is] a sufficient connection or similarity between the independent offense and the crime charged so that proof of the former tends to prove the latter.

(Citations and punctuation omitted.) *Watley v. State*, 281 Ga. App. 244, 246-247 (3) (635 SE2d 857) (2006). See Uniform Superior Court Rule 31.3.

> When reviewing the trial court's factual findings regarding whether the State satisfied the three-prong test, we apply the clearly erroneous standard. Further, the decision to admit similar transaction evidence which satisfies the three-prong test is within the trial court's discretion and will not be disturbed absent an abuse of that discretion.

(Citations and punctuation omitted.) *Watley v. State*, 281 Ga. App. at 247 (3).

When evidence of another crime or other prior bad act is introduced to prove the defendant's identity as the perpetrator of the charged offense, a "much greater degree of similarity between the charged crime and the uncharged crime is required . . . than when it is introduced to prove a state of mind." (Citation and punctuation omitted.) *Jones v. State*, 236 Ga. App. 330, 333 (1) (c) (511 SE2d 883) (1999). To prove identity, "[m]uch more is demanded than the mere repeated commission of crimes of the same class, such as repeated murders, robberies or rapes. The pattern and characteristics of the crimes must be so unusual and distinctive as to be like a signature." (Citation and punctuation omitted.) Id. In other words, the prior bad act and the charged offense must be "so nearly identical in method so as to earmark both the prior act and [the charged] offense as the handiwork of the accused." (Citation and punctuation omitted.) *Cole v. State*, 216 Ga. App. 68, 70 (1) (453 SE2d 495) (1994).

Considering the facts adduced, the two prior acts and the charged offense share these similarities: within a period of four years, Usher and the assailant entered a home located within one mile of Usher's home and took easily portable personal property belonging to a

woman over the age of 50.[2] The finding underlying the trial court's ruling — that is, that the State proved that Usher's 1998 burglaries and the violent assault and robbery of the victim in the case sub judice shared characteristics so unusual and nearly identical in method as to earmark the crimes as the handiwork of a particular person — was clearly erroneous. See *Jones v. State*, 236 Ga. App. at 333 (1) (c) (trial court's finding that the defendant's repeated past robberies of convenience stores at gunpoint were in the nature of a signature so as to be proof of his identity in a later convenience store robbery was clearly erroneous); *Cole v. State*, 216 Ga. App. at 70 (1) (trial court's finding that the defendant's prior armed robbery was sufficiently similar to charged offense of robbery by sudden snatching to be admissible to establish identity was clearly erroneous). The record shows that the only other evidence on the issue of identity was the victim's pretrial and trial identification. While this evidence identifying Usher as the perpetrator was legally sufficient, it was not overwhelming.[3] Given that evidence of prior crimes is highly and inherently prejudicial, we cannot find under the circumstances presented in this case that the trial court's error in admitting the evidence of the 1998 offenses was harmless. Cf. *Jones v. State*, 236 Ga. App. at 333 (1) (c) (error in admitting prior crime on issue of identity was harmless where the defendant took the stand and admitted committing the charged robbery and only denied threatening the victim with a gun). Accordingly, we reverse Usher's convictions.

2. Usher contends the evidence was insufficient to prove beyond a reasonable doubt that the victim was 65 years of age or older as charged in the indictment. See OCGA § 16-5-21 (d) (authorizing an enhanced penalty for aggravated assault where the victim is 65 years of age or older). Because a trial court may apply OCGA § 16-5-21 (d)

---

[2] Under Georgia law, "the proper focus" in determining whether evidence of a prior transaction is admissible "is upon the similarities between the incidents and not upon the differences." (Citation and punctuation omitted.) *Daniels v. State*, 281 Ga. 226, 228 (1) (637 SE2d 403) (2006). Still, we note that in the prior acts Usher broke into the victims' homes while no one was at home and stole jewelry, but the apparent purpose of the assailant in the case sub judice was to break in while the victim was sleeping and rape her, and the theft of currency occurred only after the victim suggested it in an attempt to avoid being raped; the prior acts involved women in their 50s, but the victim in the charged offense was 91; and, unlike the victim in the charged offenses, one of the prior victims did not live alone.

[3] See *Brodes v. State*, 279 Ga. 435, 440-441 (614 SE2d 766) (2005) (discussing empirical studies that have shown that eyewitness identification can be unreliable, depending on the circumstances, such as when the victim of a violent crime by a stranger sees the perpetrator for only a brief period of time).

only after a jury finds beyond a reasonable doubt that the victim was 65 years of age or older,[4] we will address this argument.[5]

On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict and an appellant no longer enjoys the presumption of innocence. This Court determines whether the evidence is sufficient under the standard of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979), and does not weigh the evidence or determine witness credibility. Any conflicts or inconsistencies in the evidence are for the jury to resolve. As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, we must uphold the jury's verdict.

(Citations omitted.) *Rankin v. State*, 278 Ga. 704, 705 (606 SE2d 269) (2004). In this case, in addition to the jury's ability to deduce the victim's approximate age from its observation of her appearance and demeanor, a detective testified, without objection, that the victim was 91 years old. This enumeration lacks merit.

3. The remaining error asserted by Usher is unlikely to recur at trial.

*Judgment reversed. Miller, J., concurs. Blackburn, P. J., concurs in judgment only.*

DECIDED APRIL 2, 2008.

*David J. Walker*, for appellant.

---

[4] See *Blakely v. Washington*, 542 U. S. 296, 301 (II) (124 SC 2531, 159 LE2d 403) (2004) ("Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.") (citation and punctuation omitted); Ga. L. 1984, p. 900 (the General Assembly enacted subsection (d) "so as to change the penalty provisions relating to persons convicted of the crime of aggravated assault"); *Howard v. State*, 230 Ga. App. 437, 439 (5) (496 SE2d 532) (1998) (proof that the victim was at least 65 years old is required to enhance the penalty under OCGA § 16-5-21 (d)), overruled on other grounds, *Curtis v. State*, 275 Ga. 576 (571 SE2d 376) (2002).

[5] See Ga. Const. of 1983, Art. I, Sec. I, Par. XVIII ("No person shall be put in jeopardy of life or liberty more than once for the same offense except when a new trial has been granted after conviction or in case of mistrial."); OCGA § 16-1-8 (d) (2) ("A prosecution is not barred within the meaning of this Code section if . . . (2) [s]ubsequent proceedings resulted in the invalidation, setting aside, reversal, or vacating of the conviction, . . . unless there was a finding that the evidence did not authorize the verdict."); *Holcomb v. Peachtree City*, 187 Ga. App. 258, 258-259 (1) (370 SE2d 23) (1988) (the double jeopardy provision of the Georgia Constitution bars a retrial where a verdict is reversed on appeal and the appellate court finds that the prosecution failed to establish an essential element of an offense, that is, where the evidence adduced was insufficient to authorize the guilty verdict).

*Jewel C. Scott, District Attorney, Anece Baxter White, Assistant District Attorney*, for appellee.