A08A0186. RILEY v. THE STATE.

(663 SE2d 835)

ADAMS, Judge.

James Riley appeals the trial court's denial of his motion for new trial following his conviction on one count of trafficking in cocaine and one count of possession of cocaine. We affirm.

Viewed in the light most favorable to the verdict,[1] the evidence at trial demonstrated that on June 9, 2004, a confidential informant

---

[1] See *Fincher v. State*, 289 Ga. App. 64 (656 SE2d 216) (2007).

working with the Atlanta Police Department made a controlled drug buy at a house on Metropolitan Parkway, which was operated as a "drug trap"[2] for an alleged dealer named Larrion Dickerson. Later that day, the police obtained a search warrant, and when the officers returned to the house to execute it, they found Riley sitting on the front step. As they approached the front door, Riley ran to the back of the house. Inside, they found a woman named Frenchie Lemon in a hall near the front of the house and Riley in the kitchen at the back. A "trail" of seven "hits" of cocaine led up to Riley and the packages were scattered around him. A pot of hot grease was on the stove with three additional hits of cocaine in it, and it appeared to the officers that Riley was trying to destroy the drugs. Riley told police that Lemon put the cocaine in the grease, but Lemon said that Riley had done it. The officers later found a large quantity of cocaine in the basement. The drugs in the basement were packaged in the same kind of bags, with the same "little picture" on them, as the drugs in the kitchen.

Lemon testified that Riley and she both sold drugs for Dickerson. Although Lemon never personally saw either Riley or Dickerson make a hand-to-hand drug transaction at the house on Metropolitan Parkway, she had seen Riley sell drugs for Dickerson in the past.[3] She said Riley was at the house when Dickerson brought in the drugs police later found in the basement, although she did not know whether Riley saw them. Lemon said that Dickerson operated the house on Metropolitan Parkway as one of several drug traps in Atlanta, and left Riley to watch the house for him on June 9, as he did "every day." Lemon denied selling any drugs that day, but said that she saw Riley in possession of 15 bags of drugs, with little pictures of green faces on them. Riley told Lemon that he intended to sell the drugs. Because Dickerson left Riley with the drugs, he was to handle any requests to purchase cocaine that day. Lemon denied that she had tried to destroy any cocaine, but instead was in a bedroom lying down when she heard the police come into the house.

Riley was charged with two counts: (1) Count 1, which related to the cocaine found in the basement, charged him with trafficking in cocaine based upon a knowing possession of a mixture of cocaine with a purity of at least 10 percent and a weight in excess of 28 grams; and (2) Count 2, which related to the cocaine found in the kitchen, charged him with possession of cocaine in a separate amount from that in Count 1.

---

[2] A witness defined the term "drug trap" as "a place where you sell dope."

[3] Lemon had only been staying at the house for two days at the time of her arrest.

At the conclusion of the State's case, Riley moved for a directed verdict as to Count 1, arguing that the State had failed to prove he had sufficient knowledge of the drugs in the basement to be guilty of the crime as charged. The State countered that there was enough evidence to support an inference that Riley was aware that Dickerson kept drugs in the house, even if he did not know the exact amount or location of the drugs, and this inference is enough to make him a party to the crime of trafficking.[4] The trial court denied the motion for directed verdict.

1. Riley asserts that the evidence was insufficient to establish that he was the principal perpetrator of the crimes charged as alleged in the indictment. He argues that because the indictment did not charge him as a party to the crimes of trafficking and possession, the State was required to prove that he was the principal to those crimes. Conversely, he argues that if the State sought to convict him merely as a party to the crime, then it was required to prove that fact beyond a reasonable doubt and it became an essential element of the offense. Thus, he asserts that the failure to charge him in the indictment as a party to the crime impinged upon his right to have a jury determine every element of the crimes charged, citing *Blakely v. Washington*, 542 U. S. 296 (124 SC 2531, 159 LE2d 403) (2004), and *Apprendi v. New Jersey*, 530 U. S. 466 (120 SC 2348, 147 LE2d 435) (2000).

But it is well settled in Georgia that "[t]he State is not required to indicate in the indictment that it is charging a person as a party to the crime." (Citation omitted.) *Glenn v. State*, 278 Ga. 291, 294 (1) (b), n. 4 (602 SE2d 577) (2004). See also *John v. State*, 282 Ga. 792, 793 (2) (653 SE2d 435) (2007). Thus, Georgia law "does not require that one who is a party to the crime be indicted as a party; rather, it provides that one who is a party to the crime may be indicted, convicted and punished for that crime upon proof that he was a party to the crime." (Citation and punctuation omitted.) *Hill v. State*, 282 Ga. App. 743 (2) (639 SE2d 637) (2006). Moreover, both this Court and our Supreme Court have rejected Riley's argument that his right to trial by jury necessitated that he be indicted as a party to a crime before he can be tried as such. *John v. State*, 282 Ga. at 793 (2); *Hill v. State*, 282 Ga. App. at 745 (2).

2. Riley next contends that the evidence was insufficient to prove that he knowingly possessed the cocaine as described in Count 1 or

---

[4] We note that the State's appellate brief failed to comply in full with Court of Appeals Rule 25 (c), in that it failed to contain specific references to the appellate volume and page of the transcript to support each of the State's factual statements and further failed to fully comply with Court of Appeals Rule 25 (b) requiring legal citations. We take this opportunity to remind counsel that compliance with these rules allows this Court to fully consider the parties' appellate arguments, while the failure to follow these rules hampers such consideration.

that he intentionally joined in Dickerson's and Lemon's trafficking. He asserts that the evidence demonstrated that the drugs in the basement belonged to Dickerson, who exercised sole control over them, and that there was no evidence connecting him directly to that cocaine.

"In evaluating the sufficiency of the evidence, the relevant question is whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Footnote omitted.) *Brown v. State*, 288 Ga. App. 812 (655 SE2d 692) (2007). See also *Cody v. State*, 222 Ga. App. 468, 470 (1) (474 SE2d 669) (1996) (same, for review of denial of motion for directed verdict). Thus, if any evidence established beyond a reasonable doubt that Riley acted either as a principal or as a party to the crimes, his convictions will stand.

In applying this standard, we note that

> [i]t is general law in this state that merely finding contraband on premises occupied by defendant is not sufficient to support a conviction if it affirmatively appears from the evidence that persons other than the defendant had equal opportunity to commit the crime. Presence at the scene of a crime and nothing more will not support a conviction.

(Citations and punctuation omitted.) *Ramsay v. State*, 175 Ga. App. 97, 99 (7) (332 SE2d 390) (1985). Nevertheless, "[b]oth knowledge and possession may be proved, like any other fact, by circumstantial evidence." (Citations and punctuation omitted.) *Abernathy v. State*, 278 Ga. App. 574, 578 (1) (630 SE2d 421) (2006). And "[i]t has long been the law that knowledge may be proved by facts and circumstances from which a jury could reasonably infer that a defendant knowingly possessed contraband." (Citations omitted.) *Fernandez v. State*, 275 Ga. App. 151, 154 (2) (619 SE2d 821) (2005). Thus, "OCGA § 16-2-6 provides that a jury may find criminal intention upon consideration of the words, conduct, demeanor, motive, and all other circumstances connected with the act for which the accused is prosecuted." (Punctuation omitted.) Id. Moreover,

> [w]hile mere presence at the scene of the commission of a crime is not sufficient evidence to convict one of being a party thereto, presence, companionship, and conduct before and after the offense are circumstances from which one's participation in the criminal intent may be inferred.

(Citation and punctuation omitted.) *Sherrer v. State*, 289 Ga. App. 156, 159 (2) (656 SE2d 258) (2008).

Even though Dickerson may have purchased and stored the cocaine in the basement, doling it out to Riley and Lemon to sell, we find that the evidence was sufficient to uphold Riley's conviction as a party to the crime of trafficking. The jury could have found based upon the evidence that Riley was in the house when Dickerson brought the drugs there; Riley obtained the cocaine in his possession from Dickerson; he had sold cocaine on Dickerson's behalf in the past and announced his intention to sell cocaine that day; he was left to handle cocaine sales at the house in Dickerson's absence; the cocaine in his possession was in the same packaging as the cocaine in the basement; and Riley acted to destroy the cocaine at hand when police arrived. The jury could infer from these circumstances that Riley knew Dickerson kept cocaine in the house to sell, even if Riley was not aware of the specific amount or location of the cocaine. The jury could also infer that it was Riley's intent to assist and support Dickerson in his possession of this cocaine for trafficking. See *Sherrer v. State*, 289 Ga. App. at 159-160 (2) (circumstances supported possession for trafficking conviction even where defendant did not own residence or vehicle where drugs were found); *McKenzie v. State*, 283 Ga. App. 555, 560 (642 SE2d 187) (2007) (where totality of the evidence was sufficient to connect the defendant to possession of drugs, the jury's verdict will be sustained); *Fernandez v. State*, 275 Ga. App. at 154-155 (2) (defendants' actions and surrounding circumstances sufficient to support conviction for cocaine found in secret compartment of car belonging to third party); *Cook v. State*, 226 Ga. App. 113, 114-115 (1) (485 SE2d 595) (1997) (defendant's action in aiding cocaine owner to hide and destroy contraband sufficient to connect her to cocaine). Cf. *Hammond v. State*, 255 Ga. App. 549, 553 (4) (565 SE2d 873) (2002) (actual physical possession not required to prove trafficking when actual active participation in the possession of such illegal drugs so as to be a party to the crime of trafficking is shown).

Riley asserts, however, that the State's use of evidence that he was in the kitchen to support his knowing possession of the cocaine found there, means "it could not use the same knowledge to prove his possession of" the cocaine in the basement. Although the State relied, in part, on Riley's presence in the kitchen to support his participation as a party to the crime of possessing the cocaine found in the basement, we find that this fact could be considered in connection with both counts.

> [T]he applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether

there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.

(Punctuation and footnote omitted.) *Drinkard v. Walker*, 281 Ga. 211, 215 (636 SE2d 530) (2006). Accordingly, "[a] single act may be an offense against two statutes; and if each statute requires proof of an additional fact which the other does not, an acquittal or conviction under either statute does not exempt the defendant from prosecution and punishment under the other." (Punctuation and footnote omitted.) Id. Here, the trafficking offense under Count 1 required proof of possession of cocaine in excess of 28 grams and the possession offense under Count 2 required proof of an amount of cocaine separate from that in the basement. Thus, the evidence established two separate offenses.[5] See *Jones v. State*, 290 Ga. App. 490, 494 (3) (659 SE2d 875) (2008).

Accordingly, the evidence was sufficient to support Riley's conviction under Count 1.

3. Riley further argues that the evidence was insufficient to support his conviction under Count 2. He asserts that the evidence did not support the jury's finding that he possessed the cocaine in the kitchen, because others in the residence had equal access. We find no merit to this argument.

While the fact that others had equal access to the drugs "may inculpate them, . . . such evidence does not automatically exculpate [Riley]. Instead whether the evidence that others had access to the contraband was sufficient to rebut the evidence that [Riley] was in possession of the drugs was properly reserved for the jury." (Citation and punctuation omitted.) *Castillo v. State*, 288 Ga. App. 828, 830 (655 SE2d 695) (2007). Moreover, "[p]ossession of contraband may be joint or exclusive, and actual or constructive. A person who knowingly has direct physical control over a thing at a given time is in actual possession of it." (Punctuation and footnotes omitted.) *Herberman v. State*, 287 Ga. App. 635, 637 (1) (653 SE2d 74) (2007).

> Beyond a defendant's spatial proximity to the drugs, constructive possession may be shown by demonstrating the defendant knowingly had both the power and intention at a given time to exercise control over the substance. Power may be inferred from access to drugs, while the matter of intent may be derived from the surrounding circumstances.

---

[5] Riley has not enumerated as error or raised any argument that the cocaine in the house should have been considered as a whole for purposes of indictment or sentencing, and therefore we expressly do not address such issues. See generally *Gooch v. State*, 249 Ga. App. 643, 648 (5) (549 SE2d 724) (2001).

(Citation omitted.) *Castillo v. State*, 288 Ga. App. at 830.

Lemon testified that she saw Riley earlier on June 9 with 15 bags of cocaine that he said he planned to sell that day. Later, when Riley saw the police approaching, he ran inside the house where he was found in the kitchen with seven bags of cocaine and the heated pot of grease containing three additional "hits." He was the only one in the kitchen at the time. This evidence went beyond mere spatial proximity and was sufficient both to corroborate Lemon's testimony and to support the charge that he was in possession of the cocaine found in the kitchen. Further, the evidence of equal access would have permitted the jury to find that, rather than proving Riley's innocence, it established that he and the others had joint constructive possession of the drugs in the kitchen. *Castillo v. State*, 288 Ga. App. at 830. The evidence was therefore sufficient to support Riley's conviction under Count 2.

*Judgment affirmed. Smith, P. J., and Mikell, J., concur.*

DECIDED JUNE 25, 2008.

*Mark A. Yurachek*, for appellant.

*Paul L. Howard, Jr., District Attorney, Peggy R. Katz, Assistant District Attorney*, for appellee.